ATCHISON & NEBRASKA RAILROAD CO. v. PETER WAGNER.

1. BILLS OF EXCEPTIONS—*Preparation of; Must be Complete.* A bill of exceptions can be settled and allowed only by the judge, and when it receives his signature it should be complete, and nothing left to be settled by the agreement, recollection, or judgment of counsel, clerk, or other person.

2. ———— *Record—Must Prove Itself.* A bill of exceptions is a record, and like any other record is not to be established by parol testimony, but must carry on its face the evidences of its own integrity and completeness.

3. ———— *"Skeleton Bills;" Rules for Determining their Sufficiency.* While what is familiarly known as a skeleton bill, that is, a bill which provides for the subsequent copying by the clerk into it and as a part of it some paper or document, is allowed, yet to make such a bill valid and complete these rules must be regarded: 1st, The bill, in referring to such paper or document, must purport to incorporate it into and make it a part of the bill; a mere reference to it, although such as to identify it beyond doubt, or a statement that it was in evidence, is not sufficient. 2d, The document must itself, at the time of the signature of the bill, be in existence, written out and complete. 3d, It must be annexed to the bill, and referred to as annexed, or it must be so marked

by letter, number, or other means of identification mentioned in the bill as to leave no doubt when found in the record that it is the one referred to in the bill; and these means of identification must be obvious to all, so that any one examining the record can know what document is to be inserted, or after insertion that the clerk has made no mistake.

4. ALLEGED MISCONDUCT OF PARTY; *Discovery at the Trial; Investigation.* Where, after all the testimony has been heard, but before the arguments have commenced, one of the parties ascertains or has good reason to believe that one of his adversary's witnesses has been compelled by such adversary to testify falsely against him, he is not obliged to wait until after the verdict, and then seek a remedy for the wrong by a motion for a new trial, but may immediately call the attention of the court to the matter and have it investigated, and if true, the fact made known to the jury before retiring to consider of their verdict.

5. ————— When the attention of the court is called to such a matter it may investigate it openly in the presence of the jury, or in the first instance privately and out of the hearing of the jury. The latter is the preferable course unless the fact of such charge has in some way reached the ear of the jury, in which case it may be better that the jury should know the entire truth, rather than render a decision with a suspicion in their minds of something wrong.

## *Error from Atchison District Court.*

WAGNER sued the *Railroad Company* for alleged personal injuries as having occurred in March 1875, in the city of Atchison. *Wagner* was a day carpenter working in the employ of the American Bridge Company then constructing a bridge across the Missouri river, and was at work in a small board shop put up by said bridge company within four or five feet of the *Railroad Company's* railroad track, near the depot and immediately upon the river bank. The front of the shop rested on the earth, and the rear was supported upon posts. One of defendant's cars got off the track, and by breaking down the bank or by striking against the shop such shop was thrown down, and plaintiff was injured. The action was tried at the November Term 1875 of the district court. Verdict and judgment for plaintiff for $11,500 damages. The *Railroad Company* brings the case here. Defendant in error, *Wagner*, moved to strike from the transcript what purported to be copies of certain bills of exceptions.

*W. W. Guthrie,* and *B. F. Stringfellow,* for plaintiff in error —against the motion to strike out, cited among others the following: 29 Ala. 464; 32 Ala. 395; 32 Ga. 557; 4 La. An. 575; 35 N. Y. 331, 1 G. Greene, 153; 4 Wallace, 188; 19 Ohio, 426; 15 Iowa, 454. That Wagner could not recover, the railroad being rightfully in the street, and the shop being there wholly without right, and as a trespasser, 10 Kas. 552; 15 Kas. 86; 5 Kas. 167, 191, 433, 445; 9 Kas. 597; 6 Blackf. 326; 4 Ohio St. 424; 13 Ind. 325.

*Everest & Waggener,* and *Doniphan & Reed,* for defendant in error, in support of their motion to strike out, cited Morris, (Iowa,) 483; 1 G. Greene, 153; 3 Iowa, 152; 10 Iowa 110, 558; 11 Iowa, 9, 11, 214; 15 Iowa, 453; 18 Iowa, 22; 16 Wis. 354; 19 Wis. 377; 24 Wis. 514; 27 Wis. 465; 1 Ohio St. 388, 409; 11 Nev. 314; 32 Mich. 259; 31 Mo. 123. Upon the merits of the case, negligence, etc.: 50 N. Y. 203; 15 Grat. 230; 59 Mo. 495; 20 Ohio St. 205; 9 Kas. 620; 14 Kas. 37, 512; 62 Ill. 314; 65 Barb. 103; 34 N. Y. 628; 79 Penn. St.; 38 Iowa, 120; 14 Minn. 57; 7 Wal. 663; 19 Conn. 507; 37 Cal. 419; 8 Allen, 560. That the verdict will not be set aside for excessive damages, 2 Gill. 432; 3 Dana, 464; 29 Iowa, 216; 64 Barb. 448.

The opinion of the court was delivered by

BREWER, J.: This was an action in the district court of Atchison county to recover damages for personal injuries, in which judgment was rendered in favor of defendant in error. The contest in this court has been conducted with vigor and bitterness. There has been that irritation and suspicion on the part of counsel which is both unfortunate and unpleasant.

Passing by all the personal allusions and complaints in the briefs, we shall consider simply the legal questions involved. And at the threshold we find on the part of the defendant in error a challenge of substantially the whole record. In

the transcript filed with the petition in error appear three
bills of exceptions; and a motion was made to
strike them out, on the ground that they are not
copies of the bills as signed and now on file in
the district court.   Upon this motion the original bills were
produced and offered in evidence, together with much other
testimony.   The bills when signed were what are sometimes
called "skeleton bills"—that is, with blanks containing di-
rections to the clerk, "here insert," etc.   Such bills it is
claimed are nullities, and the clerk has no power in copying
to make the insertions, but must follow the very letter of the
bill as signed.   It is not disputed that the allowance of a
bill of exceptions is the act of the trial judge.   A paper
purporting to be a bill of exceptions, if unsigned by him,
will not be noticed in the supreme court: *Waysman v.
Updegraph*, McCahon, 89; *Couse v. Phelps*, 11 Kas. 455;
*Kshinka v. Cawker*, 16 Kas. 63.   The agreements of counsel
are insufficient: *Hodgden v. Comm'rs of Ellsworth Co.*, 10
Kas. 637; *The State v. Bohan*, ante, 28.   The certificate of
the clerk will not answer: *McArthur v. Mitchell*, 7 Kas. 173;
*The State v. Bohan*, supra.   The language of the statute is
plain: "The party excepting must reduce his exceptions to
writing and present it to the *judge for his allowance*.   If
true, it shall be the duty of the judge to allow and sign it."
Gen. Stat., p. 686, code, § 303.

It would seem to follow from this that when the bill re-
ceives the signature of the judge it should be complete, and
this we understand to be the substance and spirit of all the
decisions.   There is to be no further discussion,
no further discretion; the record is made.   "The
office of a bill of exceptions is to bring upon
the record some portion of those proceedings which do not
of right and of course go upon the record." (*Stoner v. Jack-
son*, 17 Kas. 607.)   It is itself a part of the record.   But
a record must speak for itself.   It must show upon its face
all that it is.   It must be its own evidence of all that it con-
tains.   No part of its contents may rest upon the discretion

1. Bill of excep-
tions; prepa-
ration of.

2. Bill is a record,
and must be
complete in
itself.

of the clerk, the recollection of the judge, or the testimony of counsel. But to insure this certainty, is it essential that everything be written out in full, every document and writing copied into the bill before signature? Such appears to be the import of some of the authorities cited; but that seems to us unnecessary stringency, and to impose needless clerical labor. Where a deposition or other writing is to be made a part of a bill it can be referred to with such marks of identification as to exclude all doubt. That surely ought to be sufficient; and so we think the better authorities hold. But these things must exist to exclude all doubt:

*3. Skeleton bill; requirements, to be valid.*

1st. The bill in referring to such extrinsic document must purport to incorporate it into and make it a part of the bill. A mere reference to the document, although such as to identify it beyond doubt, or a statement that it was in evidence, is not sufficient, for such reference and statement do not make it certain that judge or counsel intended that it should be copied into and made a part of the bill.

2d. The document itself must be in existence, written out and complete at the time of the signature of the bill; otherwise the door is open for dispute as to its language, and the bill may not in fact be allowed by the judge within the statutory time. A reference to the testimony of some witness to be thereafter written out by him, and as written out to be inserted, is improper; and such testimony, though written out and inserted, must be disregarded; for that in effect places in the bill the witness's statements of the testimony, and not the judge's. So also, if a document has been totally or partially destroyed, it must be restored before the signature, and the paper as restored clearly identified. And again: Suppose a paper in a foreign language is received in evidence and translated to the jury by some witness on the stand; it will not do to refer to that paper in the original, leaving the translation to be thereafter written out by any one, not even the witness who translated it to the jury; but the translation must be written out and properly referred to, so that the

judge may approve it as the one given on the trial. The same principle renders it proper that short-hand notes be written out before the signature; for the notes of the stenographer are not a record; they are not conclusive as to what in fact was the testimony; they are not good against the certificate of the judge, and are no substitute for it. Whatever reliance the judge may place upon such notes, he after all must determine what was and what was not the testimony; and until those notes are written out, neither he nor counsel can determine what they will show as the testimony.

3d. And in this we appropriate the language of the supreme court of the United States in the case of *Leftwich v. Lecann*, 4 Wall. 187, in which the court says: "If a paper which is to constitute a part of a bill of exceptions is not incorporated into the body of the bill, it must be annexed to it, or so marked by letter, number, or other means of identification mentioned in the bill, as to leave no doubt, when found in the record, that it is the one referred to in the bill of exceptions." And these means of identification must be obvious to all. No mere memorandum, intelligible it may be to a single person, even the clerk, but indicating nothing to any one else, will be sufficient. They must be such that any one going to the record can determine what document is to be inserted, or, after insertion, that the clerk has made no mistake. The record must prove itself, and not the record *and* the testimony of the clerk. The clerk changes; the record endures. And long after judge and clerk are both gone, the record, if good, must carry on itself the evidence of its own integrity.

It may be well to notice some of the vast number of authorities cited by counsel. In the case of *Reed v. Hubbard*, 1 G. Greene, (Iowa,) 153, the bill of exceptions recited, that *Illustrations, and authorities.* "The plaintiff exhibited his bill of particulars — [ here insert the same.]" And the court sustained a motion to strike out the bill of particulars as copied by the clerk. See also same volume, the case of *Humphrey v. Burge*, p. 223. In the case of *Harmon v. Chandler*, 3 Iowa, 152, the

court says: "In order to bring before this court, as a part of the record, any paper used or proceeding had in the district court, not made a part of the record by statute, it must be embodied in the bill of exceptions, or so plainly identified that there cannot possibly be any mistake as to what is referred to. To refer to a motion, or instruction, as, 'marked, A,' and, '[here insert it,]' is not sufficiently certain for the ends of justice." See also, *Jordan v. Quick*, 11 Iowa, 9; *State, ex rel., v. Jones*, 11 Iowa, 11; *State v. Larkin*, 11 Nevada, 314; *Harbaugh v. Judge*, 32 Mich. 259; *Walker v. Stoddard*, 31 Mo. 123; *Oliver v. Town*, 24 Wis. 514. In the case of *Sexton v. Willard*, 27 Wis., pages 465, 468, the court says: "The bill of exceptions on file is imperfect and incomplete on its face. Blanks are left in it for various depositions and other documents, which, it states, were read in evidence on the trial, and no reference is made to them, or description of them given, by which they can be identified. The attorneys might differ as to the identity of these, and there would be no means of settling the controversy. They should have been inserted in the bill, or made part of it by certain reference, in order that no such dispute may arise." In the case of *Hicks v. Person*, 19 Ohio, 446, the court says: "All the evidence before the jury must be embodied in or made a part of a bill of exceptions. It will not do, as is sometimes attempted to be done, to refer to the records of courts, or records of deeds, and attempt to make them parts of bills of exceptions. It will not do to refer to depositions on file by the names of the deponents, or by artificial marks upon the depositions themselves, without something beyond this. They must be attached to or made part of the bill of exceptions, so that when a record of the case shall be made they can be introduced into that record as constituting a part of the case." And further, *Wells v. Martin*, 1 Ohio St. 388; *Busby v. Finn*, 1 Ohio St. 409; *Young v. State*, 23 Ohio St. 578; *Stewart v. Rankin*, 39 Ind. 161; *Kesler v. Myers*, 41 Ind. 546; *State v. Railroad Company*, 44 Ind. 350; *Vanderkarr v. State*, 51 Ind. 91; *Comm'rs Henry County v. Slatter*, 52 Ind. 171; *Everett v. Gooding*, 53 Ind. 72. In

the case of *Garlington v. Jones*, 37 Ala. 240, the court, speaking of papers not copied into the bill of exceptions, but made part thereof by reference, says, that they must "be described by such identifying features as to leave no room for mistakes in the transcribing officer." *Strawbridge v. The State*, 48 Ala. 308; *Tuskaloosa Co. v. Logan*, 50 Ala. 503; *Huff v. Gilbert*, 4 Blackf. 19; *Spears v. Clark*, 6 Blackf. 167; *V. University v. Embree*, 7 Blackf. 461.

Applying the rules above given to the case at bar, and what is the result? Bill of exceptions No. 3 is the one purporting

*Application of rules.* to preserve the testimony taken on the trial. In the original bill of exceptions, as allowed and signed by the trial judge, the only identification of the evidence offered by plaintiff is as follows — quoting from the bill:

"As will appear from a stenographic record thereof as follows: [*Here copy record of testimony as kept by stenographer, down to resting of plaintiff's case.*] The said depositions taken by plaintiff, to-wit: [*Here copy names of witnesses, and depositions, as read.*]"

And the only identification of evidence offered by the defendant to be inserted in said bill of exceptions is as follows:

"Defendant, to maintain the issue upon its part, offered evidence which was received by the court of the kind and in order as follows, as also kept by such stenographer: [*Here copy defendant's evidence.*]"

And the evidence of plaintiff in rebuttal is not even identified by the stenographic record, but it is stated that, "The plaintiff offered evidence in rebuttal which was received by the court as follows: [*Here copy evidence in rebuttal.*]" Among the papers brought from the office of the clerk of the district court, and offered in evidence on the motion, is a large roll which upon examination reads as the testimony of witnesses given upon this trial, and which appears to have been copied into the transcript filed in this court as the testimony referred to in the original bill. But upon this roll we find no filemarks, or other marks of identification. From an examination of this roll no one could tell when it was placed among the papers of the clerk's office, or even when it was written

out; and if the clerk had produced any other roll or paper reading as testimony given upon that trial, no one could from inspection have told which was correct, or which was intended to be inserted, or which (if either) was written out by a stenographer. Indeed, the only means of identification which appear are, the facts that it reads as testimony given upon the trial, and that it is found among the papers of the case. To hold such means sufficient, would open the door to the loosest practice. Again, as a part of plaintiff's evidence the original bill directs—"[*Here copy names of witnesses and depositions as read.*]" Who is to decide what depositions were read? The court certainly by signing such a bill does not determine. It is a matter to be thereafter settled, and by whom? Still again: The only identification of rebutting testimony is—"[*Here copy evidence in rebuttal.*]" Whence is the clerk to get it? Who is to decide what was then given in evidence? Such a direction settles nothing. It does not even purport to settle anything. We have refrained thus far from noting anything outside of that which appears upon the face of the papers, for we think ·as indicated heretofore, that the identification should be apparent from the record itself, and obvious to all. In reference to the extrinsic testimony of which we received quite an amount on the hearing of the motion subject to further consideration as to its competency, we simply say this—that its contradictions only enforce the conviction that the record must be tried by itself, that the marks of identification must be on the papers, and in the record; and that such contradictions make it painfully certain that it would be in the highest degree dangerous to trust to the recollections of clerk, or counsel, or court. So far then as the motion refers to that portion of the bill of exceptions No. 3 which purports to give the testimony on the trial, it must be sustained.

Notwithstanding this we have examined the testimony at length; and, without asserting that there were absolutely no errors committed, we think that a verdict for the plaintiff upon such evidence would have to be sustained. There was

Merits of more evidence to sustain the verdict, more tend-
case. ing to show negligence on the part of the defend-
ant, than in many of the contested cases that come to this
court. We do not mean that the testimony was one-sided
entirely, for there was abundance of strong conflicting tes-
timony. But still, as to the matters of fact the verdict of the
jury would have had to be sustained, and a reversal, if or-
dered, must have been on some technical error in the admis-
sion of evidence, or in the instructions. As to the amount
of the verdict, it was unquestionably excessive; but whether
it was so excessive that for that reason alone, after having
been approved by the district court, we should have felt
compelled to reverse the judgment, is a matter we shall not
decide. Perhaps the justices might not agree upon that.

Two motions were made to suppress certain depositions,
taken respectively on the 1st and 3d of May 1875, and the
21st of October 1875. As to the first deposi-
Depositions;
motions to tions, the grounds assigned were, that they were
suppress. taken before P. S. Noble, a clerk of the plain-
tiff's attorneys, and that they were so taken without notice to
and in the absence of defendant's attorneys; and as to the
other, the grounds were that they were taken in short-hand,
and afterward written out and signed by the witnesses, and
also that they were taken before said Noble. Upon the face
of the depositions everything appears correct. The objec-
tions are raised only by extrinsic testimony. In support of
these objections the affidavits of two witnesses were filed.
They were opposed by counter affidavits. These counter af-
fidavits show that the taking of the depositions in short-hand,
and before P. S. Noble, was by consent of parties; that No-
ble, though a clerk of the plaintiff's attorneys, had no interest
in this suit, and was not attorney or relative of either party,
and was as a notary public in the habit of taking depositions
for the different attorneys of Atchison for his own benefit,
and not for the gain of the plaintiff's attorneys; and also
that the notice to take the first depositions was served on one
of the principal officers of the defendant, and that F. M.

Pierce, an attorney in the office of defendant's attorney, though not regularly employed in this case, appeared at the time named as attorney for defendant and cross-examined the witnesses without any objection on account of the notice. The motion to suppress states that Pierce was employed specially by the defendant to appear and object on account of the notice. Upon the questions of fact raised by the various affidavits, we cannot see that there was such a clear preponderance of testimony against the ruling of the district court as will justify a reversal. Again, it does not affirmatively appear that all the testimony presented on the motion is preserved in the record. *McIntosh v. Comm'rs of Crawford Co.,* 13 Kas. 171.

We cannot forbear noticing at this point a matter which seems to have escaped the attention of counsel, and which tends to show how uncertain "skeleton bills" of exceptions are, even in their best state. The skeleton bill, after referring to the motions to suppress depositions, states, that in

Skeleton bills; uncertainty.

support thereof defendant read "two certain affidavits as follows: [*Here copy two first affidavits made by W. W. Guthrie and F. M. Pierce.*]" The transcript filed with us shows at this place two affidavits of these gentlemen, of date November 10th. Further on the skeleton bill reads, "Plaintiff then read *contra* the certain affidavits of B. P. Waggener, P. S. Noble, and A. H. Horton, which are copied as follows: [*Here copy such affidavits.*]" The transcript here shows three affidavits of these three gentlemen respectively. The bill then further reads, "Defendant then read *contra* the certain other affidavits of Guthrie and Pierce, which are copied as follows: [*Here copy such affidavits.*]" And the transcript shows two such affidavits of date November 12th. Then according to the bill come the depositions themselves which were sought to be suppressed; but in the transcript there appear two more affidavits of P. S. Noble and one of B. P. Waggener, and which upon their face refer to the matters in the motion, and which are also verified on the 12th of November. Now, were these last

23—19 KAS.

affidavits really read upon the motion? Was it intended that they should be inserted in the bill of exceptions as copied for this court?' or was this simply the act of the clerk, or copyist, thinking they ought to be in? So also, where it is said that plaintiff read the certain affidavits of B. P. Waggener, etc., and the direction was to copy such affidavits, was it intended that the clerk should copy one affidavit apiece of these gentlemen? or, all affidavits of theirs he might find on file before the date of the motion? or, only such as upon examination he might deem pertinent to the matters in the motion? or, such as according to his memory were actually read? These questions find no satisfactory answer in the record. The transcript as it comes before us is doubtless correct, at any rate we may presume it to be so, as no question is made; but if it were challenged we should be at a loss from anything in the original bill to determine how many affidavits were properly copied into the record by the clerk.

One other matter remains for consideration. After the testimony was all in, the court adjourned for the arguments to the ensuing morning. At that time, before the jury had been called, but while they were present in the court room and in their hearing the counsel for plaintiff produced and read to the court an affidavit stating substantially, "that since the adjournment one of the defendant's employés and witnesses had admitted that the testimony that he had given adverse to the plaintiff he had been forced to give—that he knew he had done wrong, and done the plaintiff injustice, and that he was sorry for it." Upon this, and before proceeding further with the case, the witness, and the parties who claimed to have heard his admissions, were brought into court, questioned and cross-questioned as to the admission. When all had been so examined, the court, without taking any action on the matter so investigated, directed the argument to proceed. It is claimed that this was both "misconduct of the prevailing party," and "irregularity in the proceedings of the court,

4. Alleged misconduct of party—when to be investigated.

and the prevailing party, by which the defendant was prevented from having a fair trial," and resulted in a judgment excessive and outrageous in the last degree. It was neither. The attention of the court was called by affidavits to a matter which demanded investigation. It was proper too to investigate it before the case was finally submitted to the jury; and while a private examination before the court, and out of the hearing of the jury, would ordinarily at least in the first instance be the preferable course, we cannot think that the fact of its publicity, and the presence of the jury, turned it in this case into misconduct or irregularity sufficient to compel the reversal of the judgment. Suppose it were true, that defendant had forced one of its employés to go into court and so testify against the plaintiff as to do him injustice and wrong: that would be of course misconduct, and sufficient if not discovered until after verdict, to compel a new trial. But if discovered before the case goes to the jury, must the party wait till after verdict and then seek to remedy the wrong by motion for a new trial? That often would be far from adequate remedy. It involves necessarily delay, and all that results or may result from delay. Waste of time, expense, annoyance, absence of witnesses, failing of memory, insolvency of defendant, are more or less certain consequences of a new trial. Besides, no jury can so fully appreciate the extent and force of the wrong as that which has heard the testimony by which the wrong was sought to be perpetrated. While therefore a party may wait until after verdict, and seek to remedy the wrong by motion for a new trial, he is not compelled to so wait, and may immediately upon discovering the facts call the attention of the court to it. On the other hand, if it be misconduct for a party to force an employé to testify untruly, it is no less misconduct for the opposite party to maliciously fabricate such a charge. And if the plaintiff had made such a charge and circulated it so as to come to the ears of the jury in any other manner than by directly and openly calling the attention of the court to and demanding an investigation of it, it would be misconduct.

And more: Although openly presented to the court, and investigation demanded, if it should appear that it was wholly without foundation, and made without any reasonable grounds therefor, that would also seem to be misconduct. But where the charge is true, or there are reasonable grounds to believe it true, the party is guilty of no misconduct in coming directly and openly into court and demanding an investigation in order that his rights may be protected against such a wrong. In this case the testimony was conflicting, and we do not think the charge was established; but still from the language which the witness admitted that he had used, to the effect " that he had to go to the court and testify," it is not strange that the plaintiff and his friends understood that the compulsion referred to was that of the employer, and not of the law. The charge was not wantonly brought. The plaintiff believed it. There were some grounds for believing it. It was apparently made in good faith, and there was no misconduct in making it.

Ordinarily, as we have said, such matters should first be investigated privately before the court, and not in the hearing of the jury, in order that their attention may not be distracted to side issues; but still, whether it shall be so had or not, is a matter largely within the discretion of the court. The charge may have become so public that there is a probability of its having reached the ear of the jury. In such a case the interests of justice and the rights of both parties would seem to demand that they know the exact truth rather than return a verdict with a suspicion of wrong in their minds. In the case before us it does not seem that the public investigation of the charge was such an error or wrought such prejudice to the rights of the defendant as would justify any interference with the judgment.

The judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting, having been of counsel in the case.