The Pennsylvania Company *v*. Sears.

No. 14,971.

## THE PENNSYLVANIA COMPANY *v*. SEARS.

PLEADING.—*Complaint.—Motion to Make More Specific.*—Where the defendant desires more particularity in the allegations of the complaint, his remedy is by motion to that effect.

RAILROAD.—*Complaint.—Sufficiency of Allegation.—Inference.— Railroad Bridge.*—Where, in an action against a railroad company, by a brakeman on a freight train, for injuries received while in the discharge of his duty as such servant, the complaint alleged, among other things, that the train ran past and under the bridge, whereby his head was brought in collision with the bridge above the train, the inference is that the only place the plaintiff could have occupied at the time the bridge came in contact with his head, was on the top of some of the cars in the train.

SAME.—*Complaint, Sufficiency of.—Knowledge of Danger.—Railroad Bridge.*—It sufficiently appears from such complaint that the plaintiff did not know of the dangerous character of the bridge, where the complaint alleges, and it is admitted by demurrer, that plaintiff had not, at or before he was injured, any knowledge or notice whatever that the bridge was so low that it would come in collision with his head or any part of his body as he passed under the same.

SAME.—*Sufficiency of Complaint.—Knowledge of Defect.—Presumption.*—In such case, knowledge on the part of the company of such defect, is sufficiently shown where the occurrence of the injury under the circumstances alleged in the complaint, and admitted by the demurrer, raises the presumption of negligence on the part of the defendant.

SAME.—*Danger Incident to Service.—What is Not.—Low Overhead Bridge.—Brakeman.*—The danger of an overhead bridge maintained by a railroad company, so low that it may come in contact with the heads of its brakemen while engaged in their duties on the tops of

The Pennsylvania Company *v.* Sears.

cars as they pass under such bridge, is not one of the dangers incident to such service.

SAME.—*Duty of Company to Maintain Safe Tracks and Bridges.—Presumption.—Employe.*—It is the duty of a railroad company to construct and maintain its tracks and bridges in a safe condition, and its employes have the right to presume that it has performed this duty, and that if the company discovers any defect liable to endanger the lives or limbs of their employes operating the road, it will give them timely warning thereof.

ASSIGNMENT OF ERRORS.—*Instructions to Jury.—Conjunctive Assignment.* An assignment of error that the court erred in giving (or in refusing to give) several instructions, naming them conjunctively, can not prevail unless all of the instructions so joined in the assignment are erroneous, if given, or, if refused, are good and entitled to be given to the jury.

BILL OF EXCEPTIONS.—*Original Depositions, How Made Part of Bill.—Certiorari.—Affidavit of Clerk.*—An affidavit of a clerk in return to a writ of *certiorari*, that on a certain page of the bill of exceptions immediately following the stenographer's report of the oral evidence and its incidents, space was left for depositions, and such depositions were placed inside of the bill of exceptions at said point, but not otherwise fastened, means that the original depositions were placed within the bill, at such point, without being fastened thereto. And, in such case, if the words "here insert" are omitted, the depositions must at least be fastened to the bill before they can constitute a part thereof.

SAME.—*Can Not be Attacked by Statements of Clerk.—Certiorari.*—The integrity of a bill of exceptions can not be assailed and destroyed by the statements of the clerk in a return to a writ of *certiorari*.

From the Allen Circuit Court.

*A. Zollars, J. Morris* and *J. Brackenridge,* for appellant.

*L. M. Ninde* and *H. W. Ninde,* for appellee.

McCABE, J.—Appellee sued appellant, a railway company, for a personal injury resulting from the alleged negligence of the appellant.

Trial by jury, verdict for appellee, upon which judgment was rendered over a motion for a new trial.

The errors assigned here and not waived by failure to argue the same are, the overruling of appellant's de-

murrer to the appellee's complaint, and the overruling of appellant's motion for a new trial.

The material allegations of the complaint are as follows:

"That for the last ten years the defendant has possessed and operated the Pittsburgh, Fort Wayne and Chicago Railroad, extending from Pittsburgh, in said State of Pennsylvania, through the city of Fort Wayne, Indiana, to Chicago, Illinois.

"Plaintiff further avers that from the 16th of November, 1887, to the 8th of May, 1888, inclusive, he was employed by the defendant as brakeman on the division of its said road between said Ft. Wayne and the city of Chicago; that on said 8th day of May he left Chicago as brakeman on the defendant's train, No. 76, for said Ft. Wayne. And the plaintiff avers that between the town of Wheeler and the city of Valparaiso, in said State of Indiana, the defendant for the period of, to wit, five years last past has carelessly, negligently, and recklessly maintained an unlawful and dangerous overhead bridge over its said railroad, and unlawfully, carelessly and negligently maintained said bridge so low that when a brakeman passed thereunder standing upon a refrigerator car or other highest cars used by the defendant on its said road, his head would come in contact with and strike against said bridge, and the plaintiff further avers that although the defendant so unlawfully, carelessly and negligently maintained said bridge in a dangerous condition, as aforesaid, yet it carelessly, negligently and unlawfully failed, neglected, and refused to keep proper, suitable, and safe guards up at either side of said bridge in such a position or of such a kind or character as would, with reasonable safety, caution or warn brakemen upon its train that they were approaching and about to pass under said bridge, and the defendant during said

period also carelessly, negligently and unlawfully neglected and refused to keep proper, safe and suitable lights or lamps upon said bridge in the night time to notify or warn brakemen upon its freight trains of the presence of said bridge and of their approach thereto.

"And plaintiff avers that, to wit, on said 8th of May, in the night time, while it was dark, he was engaged as such brakeman by the defendant on its said train, No. 76, in running said train eastward upon said road and under said bridge so negligently maintained, as aforesaid, and upon and about which bridge the defendant negligently and carelessly failed at the time said plaintiff was approaching and passing said bridge upon said train, as aforesaid to keep, place, or have any lights upon or about said bridge to warn or notify him that he and said train were approaching and about to pass said bridge; and the defendant also negligently and carelessly, neglected, failed and refused at the time the plaintiff was approaching said bridge and about to pass the same as aforesaid upon said train to place or keep upon or near said bridge any suitable or proper guards or ticklers to give the plaintiff notice that he was approaching or about to pass said bridge, and he avers that after said train passed said town of Wheeler he was diligently and carefully engaged in his duties as such brakeman, and without any fault or lack of care and due diligence on his part, and without any knowledge on his part that he was approaching and about to pass under said bridge, said train, upon which he was so diligently, carefully and faithfully braking as aforesaid, ran past and under said bridge, and carried the plaintiff, without any fault whatever on his part, under and against said bridge, and whereby, and without any fault on his part, his head was brought in collision with said bridge above said train, and his head collided with said bridge above said

train with great violence whereby his skull was fractured, his head and face were bruised, mangled, and crushed, and his lip cut through and greatly injured, and whereby he became and was insensible and helpless, and his shoulder, neck, and body became and were bruised and greatly injured, and whereby he was thrown to the ground upon said railroad track, and the cars ran over him and crushed his leg from his foot to his thigh so that it became necessary to amputate the same, which was done, by means of which injuries he became sick, sore and distressed, and suffered great pain and anguish, both mentally and physically, and his life was for a long time, to wit, for six months, despaired of, and he became, and was and is, wholly disabled from ever again following his business or profession, and from ever again earning his living, and he was compelled to lay out and expend, to wit, $500 in nursing, medicines, and medical and surgical attendance in being treated for said injuries, and he avers that he was so injured as aforesaid without any fault whatever on his part; that he had not, at or before he was so injured, any knowledge or notice whatever that said bridge was so low that it would come in collision with his head or any part of his body, or that it was low enough to touch him as he passed under the same.   And he avers that all said injuries were caused by the negligence and carelessness of the defendant as aforesaid, to his damage in the sum of fifteen thousand dollars, for which he sues and demands judgment.''

The first objection urged against this complaint is that it does not state what part of the train appellee was on when he was injured, and that it is not averred that he was standing on any one of the cars when his head came in contact with the overhead bridge.

If it was material or important to appellant to have a more specific statement as to the particular place in the

train appellee occupied when the alleged injury occurred, the appropriate remedy was a motion to require greater certainty in that respect and not a demurrer for want of sufficient facts.

As to the other point, the complaint shows that on the 8th day of May he was engaged as brakeman for appellant on train No. 76 going east from Chicago, and after the same passed the town of Wheeler he was diligently engaged in his duties as such brakeman, and said train ran past and under said bridge, whereby his head was brought in collision with said bridge above said train. From this language we think it appears that the only place appellant could have occupied at the time the bridge came in contact with his head was on top of some one of the cars in that train. Whether it was a refrigerator or other highest car was not essential to the sufficiency of the complaint. It is fairly inferable from the complaint that it was only refrigerator cars and other highest cars that would not admit a brakeman to stand erect thereon and pass under said bridge in safety, and that all other cars would admit such passage.

Much useless verbiage in the complaint has obscured the statement of these facts to some extent, but not to the extent of destroying them.

The unavoidable conclusion to which the language employed leads, is that the ordinary cars in use on said road would admit such passage.

It is also claimed that the complaint is bad for the reason that it appears therefrom that appellee was not free from contributory negligence. The contention is, that as it appears from its averments that appellee was engaged for appellant as brakeman, from the 16th day of November, 1887, until the 8th day of May, 1888, he had ample opportunity of knowing all about the danger-

ous character of the bridge; and that, therefore, he assumed the risks of such employment.

The complaint "avers that from the 16th of November, 1887, to the 8th of May, 1888, inclusive, he was employed by defendant as brakeman on the division of its said road between Ft. Wayne and Chicago." What train he had been braking on during that time, whether freight or passenger, is not stated. If it was either material or useful to appellant's rights to have the complaint specify the particular train, the only remedy was a motion asking the trial court to require such specification, and not a demurrer for want of facts sufficient. No such motion was made.

It is afterwards averred in the complaint, that appellee had not, at or before he was injured, any knowledge or notice whatever that said bridge was so low that it would come in collision with his head or any part of his body, or that it was low enough to touch him as he passed under the same.

From this language, it clearly enough appears that he in fact did not know of the dangerous character of the bridge, and the demurrer admits that fact. Nor does it appear from the facts stated, that he might have known of such danger, because it does not appear that he was ever braking on a freight train for appellant prior to the occasion on which the alleged injury was received. And if that did appear, still there is nothing in the complaint to indicate that he had ever known of, or seen, "refrigerator or other highest cars" pass under said bridge, either with or without a brakeman standing thereon, or that any other facts existed within his knowledge to warn him of the dangerous character of the bridge. This analysis of the complaint, upon the point in question, makes the long list of authorities cited

by appellant's counsel, in support of his contention, inapplicable.

It is true, as stated in *Pennsylvania Co.* v. *Whitcomb*, *Admr.*, 111 Ind. 212, cited by appellant, that "no one is bound to remain in a service which he is informed is dangerous, and if an employe does voluntarily continue in the master's service after notice of its dangers he assumes all risks arising from the known dangers. * * * The risks which the employe assumes are, however, such as are incident to his service, and such as arise in cases where ordinarily safe machinery and appliances are provided. If machinery of an unusual and more dangerous character is provided, and the employe has no notice of the danger, then he does not assume the risk attendant upon its use."

To the same effect are *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151; *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440, and many other cases cited by appellant.

We do not think the danger of an overhead bridge maintained by a railroad company, so low that it may come in contact with the heads of its brakemen while engaged in their duties on top of its cars as they pass under such bridge, is one of the dangers incident to such service. There are a thousand and one dangers incident to the service of all railroad operative employes that ordinary prudence can not be expected to guard against, and for which the master is not liable, and the risks of which are assumed by the employe, but the maintenance of an overhead bridge so low as to fracture the skulls and endanger the lives of brakemen is not one of them.

The precise question here under consideration was decided by this court in *Baltimore, etc., R. R. Co.* v. *Rowan*, 104 Ind. 88, where this court, appropriating the language of the Supreme Court of Massachusetts, said:

"He who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services." "But," says this court, "there are well defined exceptions to this general rule, one of which arises from the obligation or duty of the master not to expose the servant while conducting his business to perils or hazards which might have been provided against by the exercise of due care and proper diligence upon the part of the master. * * * A railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and if, from defective construction of its road and appurtenances, an injury happen to one of its servants, the company is liable for the injuries sustained."

This court held in that case, that a complaint in all respects substantially the same as the one at bar was good on demurrer, and expressly repudiated many of the authorities cited by appellant in this case to the contrary.

That case was cited and reaffirmed by this court in *Louisville, etc., R. W. Co.* v. *Wright*, 115 Ind. 378, a case involving the sufficiency of the complaint on demurrer, for an injury received by a brakeman on account of an overhead bridge being too low. The latter case is a stronger one in support of the sufficiency of the complaint here than the former. In the latter case, it appeared that no full grown man could stand erect on any box car and pass under the bridge without striking it; that the plaintiff had been in the employ of the defendant as brakeman over that part of the road where the bridge was, from the 5th of October, to the 4th of November, 1881, and that during that time he passed, with his train, under said bridge, from eight to ten times in

the day time, and that many times in the night.    He was again employed as brakeman over that part of the road on the 11th or 12th of January, 1882, and he was injured on the night of the 13th of that month, and from his first employment to the time of his injury he had passed under the bridge from seventeen to twenty times, one-half of the number being in the night.    And yet it was held in that case, that these facts did not destroy or overthrow the allegation and the finding that he was ignorant of the dangerous character of the bridge, though it was found by the jury in answer to interrogatories that the danger was an open and obvious one in the day time but not at night.    And quoting from the first case above, this court said, in the latter case, that "It seems to us that a railroad company is, and ought to be, required to construct and maintain its roadway and appendages, and its overhead structures, in such a manner and condition that its employe or servant can do and perform all the labors and duties required of him with reasonable safety."

And, applying the language from *Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554, said:    "If a defect existed in the road which was known to the company, but which it was impossible for them to immediately remove or remedy, and in consequence thereof the road was unsafe but not impassable, and yet they should place an employe upon the road, and suffer him, in ignorance of said defect, to attempt to operate it, and injury should thereby result to him, certainly there would be a liability."

To the same effect are *Pennsylvania Co.* v. *Brush, Admr.*, 130 Ind. 347; *Nordyke & Marmon Co.* v. *Van Sant*, 99 Ind. 188; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Krueger, Admr.*, v. *Louisville, etc., R. W. Co.*, 111

Ind. 51; *Bradbury* v. *Goodwine*, 108 Ind. 286; *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440.

And, applying to that case the principles laid down by the Supreme Court of Illinois in *Illinois, etc., R. R. Co.* v. *Welch*, 52 Ill. 183, this court, in *Louisville, etc., R. W. Co.* v. *Wright, supra,* said: "The railroad track at Mendota was about eighteen inches from the edge of an awning, which projected from the station-house, so that when a freight car stood upon the track the inside edge of the car was about even with the outer edge of the awning. The awning was about eighteen inches higher than the car. There being a signal for brakes, the plaintiff in the case, a brakeman, ran upon the ladder on the side of a car, and before reaching the roof was struck by the awning and injured. It was insisted in behalf of the railway company, that there could be no recovery, for the reason that the brakeman had assumed the risks incident to the service, and had an opportunity to know of the danger from the awning. In answer to that contention the court said: 'There are many freight depots and station-houses upon the line of the Central Railway, and it would be preposterous in us to say, or to ask a jury to say, that a brakeman engaging in the service of the company must be held to know whether or not there may be one among them whose roof or awning so projects over the line of road that a brakeman on a freight train, in the performance of his duties, would be liable to be swept from the train by a collision with it.' " * * "He was required," said this court, "to observe ordinary care for his own safety, but he was not required to go over the road upon a tour of inspection looking for defective bridges or faulty track before engaging in the service."

This, we may add, was a duty which the law devolved upon the company, and an employe has a right to presume that the company had done its duty in that respect,

and if such inspection revealed any defective bridge or bridges liable to endanger the lives or limbs of their employes operating the road, that the company would give them timely warning thereof.

It is averred that the bridge had been negligently maintained by appellant for five years immediately preceding the injury. Though there is no allegation charging the company with knowledge of the dangerous character of the bridge, yet in the able brief of the distinguished counsel for appellant no objection to the sufficiency of the complaint is made on account of that omission, for the good reason, we presume, that they thought, as we think, that such objection could not be successfully made.

It is true that one of the conditions of the liability of the appellant is that it had knowledge of the defect, or that the circumstances were such that it ought to have known of the defect. The circumstances stated in the complaint speak for themselves, and *prima facie* raise the presumption that the appellant had knowledge of the defect, or, if it did not, that it was guilty of negligence in not acquiring such knowledge. The occurrence of the injury under the circumstances alleged and admitted by the demurrer raises the presumption of negligence on the part of the appellant. *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551; Shearman and Redfield on Neg., sections 59, 60; Thompson on Neg., 1229, section 3; 16 Am. and Eng. Encyc. of Law, 449, 450. See, also, *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196; *Ohio, etc., R. W. Co.* v. *McCartney*, 121 Ind. 385; *George H. Hammond & Co.* v. *Schweitzer*, 112 Ind. 246.

Appellant, however, could not very well have maintained the bridge for five years previous to the injury, without any knowledge of its dangerous character. The

court below did not err in overruling the demurrer to the complaint.

The next alleged error is the denial of the motion for a new trial.

The first point made in support of this assignment is that the evidence shows contributory negligence on the part of appellee. This contention is first met by the appellee's claim that no such question is presented by the record, because, it is contended, the evidence is not in the record. That claim is founded upon the facts disclosed by the return of the clerk to the writ of *certiorari*.

It appears from the statements of the clerk and his deputy embodied in that return, that the formal beginning of the bill of exceptions designed to incorporate the longhand manuscript of the stenographic report of the oral evidence and its incidents, etc., was found by him soon after the bill purported to have been signed and deposited in the clerk's office placed in and between the upper cover of said manuscript and immediately preceding the beginning of the evidence therein, but was not otherwise fastened, copies of each portion of the original bill of exceptions are embraced in the return; that the next part of the original bill was designed to incorporate the depositions, and the return shows that a space was left therein for depositions, and said depositions were placed inside of said bill of exceptions at said point but not otherwise fastened; that the other portions of said bill, being those parts designed to incorporate the instructions given and exceptions thereto, and those refused and exceptions thereto, were placed in and between the leaves of said longhand manuscript of said evidence at the close of the evidence, and the same were signed by the trial judge.

The members of this court, other than the writer, are of the opinion that the integrity of the bill of exceptions,

as it appears in the transcript, can not be assailed and destroyed by the statements of the clerk and his deputy, as is attempted in this case; that nothing short óf a return to a writ requiring the original bill of exceptions to be certified, and its actual production before this court can authorize the inquiry sought to be made in this case. And a majority of the court hold that if the facts stated in the return were established by competent and legal evidence it would not be sufficient to destroy the integrity of the bill; they regard the practice adopted in this case too loose to be encouraged if it may not be condemned.

The writer differs very widely from the conclusion reached on both points by the other members of the court, and believes therefore that the bill of exceptions is invalid.

There is another reason why the writer is of opinion that the bill of exceptions is invalid, and that is that the bill ought to have been made up by a direction to ''here insert'' the longhand manuscript and its incidents.

That method was held not authorized by the statute by this court in *Wagoner* v. *Wilson*, 108 Ind. 210, and many cases following that case, but the writer is of opinion that those cases were erroneously decided, and is therefore in favor of overruling them, but in this the other members of the court do not concur, therefore *Wagoner* v. *Wilson*, *supra*, is adhered to.

The return of the clerk to the *certiorari* shows that that part of the bill of exceptions designed to incorporate the depositions into the bill reads as follows: ''And be it further remembered that upon and immediately following the close of his oral evidence, the plaintiff introduced in evidence and read to the jury the following depositions of witnesses taken by him on the 11th day of January, 1889, before Matthew W. Wyeth, a justice of

the peace of Porter county, Indiana, which said depositions are as follows:'' And no other designation or direction was contained in the bill as to where the depositions were to be inserted, or whether they were to be inserted at all or not, and they were not copied into the bill, but the originals thereof were placed inside of the paper on which that part of the bill was written.

It has often been held by this court, that ''in order that written instruments shall constitute a part of a bill of exceptions, they must either be copied into it at full length before it is signed or appropriately referred to, and the proper place for insertion designated by the words 'here insert.'" *Clay* v. *Clark*, 76 Ind. 161; *Seymour, etc., Co.* v. *Brodhecker*, 130 Ind. 389; *Endsley* v. *State*, 76 Ind. 467; *Irwin* v. *Smith*, 72 Ind. 482; *Kesler* v. *Myers*, 41 Ind. 543; *Sidener* v. *Davis*, 69 Ind. 336; *Aurora Fire Ins. Co.* v. *Johnson*, 46 Ind. 315; *State, ex rel.,* v. *President, etc., Peru, etc., R. R. Co.*, 44 Ind. 350; *Burdick* v. *Hunt*, 43 Ind. 381; *Harman* v. *State*, 22 Ind. 331.

We therefore hold that the depositions referred to are not a part of the record, and hence the record shows that the evidence is not all in the record, and, therefore, we can not consider the evidence for any purpose. *Clay* v. *Clark, supra; Millikan* v. *State, ex rel.*, 70 Ind. 310; *Powers* v. *Evans*, 72 Ind. 23.

The fourth ground assigned in the motion for a new trial is that the court erred in its refusal to give the jury instructions Nos. 1, 2, 3, and 4.

And the fifth ground is that the court erred in giving to the jury * * instructions Nos. 1, 2, 3, 4, 5, 8, and 9.

It has been held by this court that where a motion for a new trial stated ''That the court erred in giving to the jury instructions numbered from one to seventeen

inclusive," joins all the instructions together in general terms, without separating or pointing out any one or more as erroneous. Such an assignment, like a joint demurrer to separate paragraphs of a pleading, can only be maintained by showing that all the instructions are incorrect." *Ohio, etc., R. W. Co.* v. *McCartney, supra; Wallace* v. *Exchange Bank*, 126 Ind. 265; *Jones* v. *Layman*, 123 Ind. 569; *Bowman* v. *Phillips*, 47 Ind. 341.

Appellant's counsel, in their able brief, have not contended that any of the instructions given, except the 1st, 2d, 3d, and 4th, were erroneous; the correctness of the 5th, 6th, 7th, and 8th are not questioned in this court, and we see no objection to them. About the only objection urged to the others is that they were not applicable to the evidence.

As the evidence is not all in the record, the presumption is that they were applicable to the evidence actually introduced, and this presumption can not be overcome until the evidence is in the record from which it shall appear that the instructions were not applicable thereto. *Stevens* v. *Stevens*, 127 Ind. 560.

But if the evidence was all in the record the invalidity of the assailed instructions could not be determined, because the motion for a new trial, as we have seen, can only prevail in case all of the seven instructions are bad. The same is true of the instructions refused.

The refusal to give Nos. 1 and 2 is not assailed in this court as error. It is sufficient to say that in the absence of all the evidence it must be presumed that the whole four were refused, if for no other reason, because they were not applicable to the evidence. But we have examined the first and second, and think they are correct in the abstract, and hence it was not error to overrule the motion for that cause, if any part of such instructions were correctly refused.

We have examined all the errors assigned and not waived, and find no available error in the record.

The judgment is affirmed.

Filed May 10, 1893.

## ON PETITION FOR A REHEARING.

McCABE, J.—A very earnest petition for a rehearing is presented in this case, in which it is insisted with apparent candor that we were not justified by the record, in our statement in the original opinion to the effect that the depositions were not copied into the bill of exceptions.

The learned counsel, in his brief for a rehearing, says: "And this court further says 'and they were not copied into the bill.' We submit that the court ought not to state that as a fact, and especially as the fact upon which the decision is made to turn, from anything shown in the clerk's return or any affidavit of Metzger. Mr. Metzger does not say that the original depositions were inserted, or that copies of the depositions were inserted 'but such depositions.' Such depositions may have been copies, or they may have been original, and this court ought not to conjecture as to one or the other for the purpose of overthrowing the record solemnly certified to by the clerk in the office at the time. This court uses the further language: 'But the originals thereof were placed inside of the *paper on which* that part of the bill was written.' This we respectfully submit, even if the affidavit of Metzger is to be looked to, is an *entire* mistake and therefore a misstatement of what is shown. Mr. Metzger's language is—'and such depositions were placed inside of *said bill of exceptions at said point*,' and not 'inside of the paper on which that part of the bill was written,' as stated by the court. Mr. Metzger, in his affidavit, was treating the whole as a bill of exceptions, the

sheet which preceded the stenographer's transcript of the evidence and the sheet which followed the evidence and preceding the depositions, and the depositions and all else which was presented to him as the bill of exceptions in the case. If the affidavit does not mean this, it means nothing, and should be disregarded *in toto,* as we feel it should be in any event.''

The difficulty with the learned counsel's strictures is that he does not quote enough of the affidavit to enable any one to know what it does mean. The affidavit states that ''the longhand manuscript of the evidence filed with the clerk of said court theretofore, to which was attached the original bill of exceptions,  *  *  an exact copy of which except the evidence and depositions therein referred to, is made part hereof, and such copy attached is number pages 1, 2, 3, and 4; that page 1 of said bill of exceptions, as shown by said copy, was placed between the upper cover of said transcript and the first page thereof, immediately preceding the beginning of the evidence, but was not otherwise fastened;  *  *  *  that on the 3d page of said original bill of exceptions as shown by page 2 of said copy, a *space was left* for depositions and such depositions were placed inside of said bill of exceptions at said point, but not otherwise fastened.''

Now, why ought we not to say, from the foregoing statement, that the depositions were not copied into the bill? Speaking of the bill, the affidavit says ''a space was left for the depositions.'' Space clearly has reference to the paper on which the bill of exceptions was written, that is, that there was space left on that paper. What was it left for? The affidavit says for depositions, that is, space was left on the paper on which the bill of exceptions was written, for depositions. And, now, what was done with that space?

We have said the depositions were not copied into the

bill, of which counsel complains as a statement not warranted by the record. Were the depositions copied into that space? The affidavit answers that inquiry by the language: "A space was left for depositions, and such depositions were placed inside of said bill of exceptions at said point, but not otherwise fastened."

The reason we felt justified, looking to the affidavit alone, in holding that this language implied and meant that the depositions were not copied into the bill, is that if they had been copied into the bill, they would have been copied into the space left for them, and had they been so copied into that space it would have been a grotesque perversion of language to say, as is said in the affidavit, that "such depositions were placed inside of said bill of exceptions at said point, but not otherwise fastened."

If they had been copied into the bill, there would have been no sense in saying that they were "not fastened, or not otherwise fastened," no more than for us to say that the language we are now writing on this paper is "not fastened," or "not otherwise fastened."

But counsel says that "such depositions may have been copies, or they may have been original, and this court ought not to conjecture as to one or the other," etc. Such a supposition can only be indulged on the assumption that the affiant did not mean what he said in the affidavit.

As we understand the learned counsel, his contention is that where plain English has been used there is no way, no means, by which to ascertain what idea is intended to be conveyed.

In short, the logical result of his contention is that human language has been devised for the purpose of concealing our thoughts instead of expressing them. If the phrase, "such depositions," does not mean the origi-

The Pennsylvania Company *v.* Sears.

nal depositions, and does not mean copies thereof, we will be pardoned for indulging an overweening curiosity to know what it does mean. But the learned counsel says it may mean "original depositions" or it may mean copies of such depositions.

We had an idea that it was our duty to determine what it did mean, just as we would determine what any other writing meant by a consideration of the whole context of the affidavit; and, after we had done so, we reached the conclusion that it meant what it said, namely, the "depositions."

We think, after a careful reëxamination of the whole affidavit, that the phrase "such depositions" means depositions and not copies.

We concede that the word depositions might be used in such a connection as to refer to copies of depositions, but that could be the case only where the context or the connection in which the word would be used would make such meaning apparent. Not only is no such context pointed out, but the learned counsel earnestly endeavors to prove that the phrase did not mean that, but that it meant neither depositions nor copies thereof, though he is willing to concede that it "may have meant 'copies,' or it may have meant 'originals.' " Who is to determine and when is it to be determined?

The language we have quoted above from the affidavit reads thus: "That on the third page of said original bill of exceptions, as shown by page two of said copy, a space was left for depositions, and such depositions were placed inside of said bill of exceptions at said point, but not otherwise fastened."

Now we had an idea that the words "on the third page" of said bill necessarily meant and implied that it was on paper. We hardly think it fair to assume that it was on blocks of wood, or plates of iron, or on leather or

cloth. The imputation, however, that we made a mistake as to what is shown can only be justified by maintaining that the language above quoted fairly means that the deposition was not written on paper, but was written on wood, stone, iron, leather, cloth or some other substance than paper. The learned counsel would hardly risk his reputation for candor by attempting to uphold such a proposition.

If the language fairly implies that the pages of the original bill were written on paper, which seems clear, then there is no difference between our statement that the depositions "were placed inside the paper on which that part of the bill was written," and the statement in the affidavit that they were "placed inside of said bill of exceptions at said point." If the bill was written on paper, then to place the depositions inside of the bill was to place them inside of the paper on which the bill was written.

No more serious dereliction of duty and violation of judicial obligation can well be imagined than a mistake as to what the record shows, by a court of last resort. No duty ought to be more pleasant to the just judge than to hasten to correct such a blunder. But after a careful reëxamination of the case, we find that no such mistake has been made, and that the record was fully and properly apprehended by the court.

But it is insisted that this affidavit of Metzger can not be looked to in determining the condition of the record. No reason is given why the affidavit should not be looked to where, as here, it is attached to and made a part of the return. The clerk has made his return to the writ of *certiorari*, and he has made Metzger's affidavit a part of that return, and thereby certifies to the truth of so much of the facts therein stated as relate to the present condition of the original bill of exceptions. That affi-

davit says: "The original bill of exceptions signed by the judge of said court, an exact copy of which, except the evidence and depositions therein referred to, is made a part hereof."

There is no conflict between the return of the *certiorari,* including the affidavit, and the record or any essential part thereof. The copies of each part of the original bill incorporating, or attempting to incorporate, the longhand manuscript, the instructions and the depositions are set out and attached to said affidavit, and the whole attached to and made a part of the clerk's return; and that part attempting to incorporate the depositions contains no directions to insert them. Counsel seems to think these things should not be allowed to overthrow a record solemnly certified. There is nothing more solemnly binding in the clerk's certificate attached to the transcript, as he first certifies it, than in his certificate to a return of a writ of *certiorari;* and, according to his return, and consistently with all he has certified in the former transcript, he now shows there was no direction in the bill of exceptions to insert the depositions. But counsel says there is nothing in the statute to prevent the incorporation of the original depositions into the bill of exceptions without copying them, and that may have been the case here, and in that case there would have been no more need for a direction to "here insert" them than if they had been copied into the bill of exceptions before it was signed.

Conceding, without deciding, that such original depositions might have been so incorporated, yet it can do appellant no good here, because the return shows they were not "fastened to the bill of exceptions." If they may be incorporated without copying and without being fastened to the bill, then the statute requiring the bill to

contain a direction to "here insert" may be entirely evaded, rendered nugatory and void.

In *Atchison, etc., R. R. Co.* v. *Wagner*, 19 Kan. 335, Brewer, J., speaking for the court, said: "When the bill receives the signature of the judge it should be complete, and this we understand to be the substance and spirit of all the decisions. There is to be no further discussion, no further discretion; the record is made. * * * It is itself a part of the record. But a record must speak for itself. It must show upon its face all that it is. It must be its own evidence of all that it contains. No part of its contents may rest upon the discretion of the clerk, the recollection of the judge, or the testimony of counsel. * * * Where a deposition or other writing is to be made a part of a bill it can be referred to with such marks of identification as to exclude all doubt. * * * We appropriate the language of the Supreme Court of the United States in the case of *Leftwich* v. *Lecann*, 4 Wall. 187, in which the court says: 'If a paper which is to constitute a part of a bill of exceptions is not incorporated into the body of the bill, it must be annexed to it, or so marked by letter, number, or other means of identification mentioned in the bill as to leave no doubt, when found in the record, that it is the one referred to in the bill of exceptions.' And these means of identification must be obvious to all. No mere memorandum, intelligible it may be to a single person, even the clerk, but indicating nothing to any one else, will be sufficient. They must be such that any one going to the record can determine what document is to be inserted, or, after insertion, that the clerk has made no mistake. The record must prove itself, and not the record and the testimony of the clerk. The clerk changes; the record endures. And long after judge

and clerk are both gone, the record, if good, must carry on itself the evidence of its own integrity.''

Counsel says in the brief: ''We must be permitted to say here that we have re-read all of the briefs filed by appellee, and fail to discover that they, in any way, make the point that the depositions were not properly in the bill of exceptions, and are not properly in the record, except upon the grounds that the different parts of the bill were not physically attached or fastened together.''

To which we answer that the failure to fasten or attach the depositions to the bill destroys appellant's theory that the original depositions were embodied in the bill instead of being transcribed into the bill before it was signed.

On page 5 of appellee's brief, filed September 11th, 1891, the following language is used: ''By section 626, the bill which is one paper may refer to written instruments or documents of evidence which are different papers, and the clerk, by that statute, is authorized to insert them. * * * To depart from this principle, the clerk will make the bill instead of the judge. The moment he is left to insert something that is not inserted, and his act makes the insertion and not the act of the judge, and the clerk must do what he does from the best information he can get as to the judge's intention. The rulings of this court have absolutely cut off the acts of the clerk, and every one else, in determining what the judge intended should be inserted.''

That language does not sound like the appellee had wholly failed to make the point that there was no direction in the bill to insert the depositions.

It is not pretended by appellant that the appellee did not contend in his briefs that the depositions were not properly incorporated in a bill of exceptions, but it is claimed that the ground which such contention was based

on was not that the bill contained no direction to "here insert." We think the question was sufficiently made to warrant us in deciding it.

Appellant's learned counsel makes a vigorous attack on the ruling in the original opinion, holding the complaint good; we have reëxamined the question with some care, and find no reason to change our opinion upon that question. Counsel is in error in supposing that the ruling "is a departure from a long line of decisions of this court." On the contrary, it is in accord with a long line of decisions cited in its support, and runs counter to none of the decisions to which he refers.

A complaint, in all substantial particulars, precisely like the one at bar, was held good in two cases by this court, and they were cited in support of the original opinion, and no reason has been suggested why we should depart from them. They are *Baltimore, etc., R. R. Co.* v. *Rowan*, 104 Ind. 88; *Louisville, etc., R. W. Co.* v. *Wright*, 115 Ind. 378.

We think we ought to adhere to them.

Therefore, the petition for a rehearing is overruled.

