## THE DOMESTIC BLOCK COAL COMPANY *v.* DEARMEY.

[No. 22,328.   Filed January 22, 1913.   Rehearing denied June 3, 1913.]

1.   PLEADING.—*Complaint.—Requisites.—Construction.—Statutes.*— By the enactment of §§341, 343, 376, 407, 700 Burns 1908, being §§47, 49, 90, 101, 580 of the code of civil procedure adopted in 1852, abolishing distinct forms of pleading, providing for the construction of pleadings, and prohibiting the reversal of judgments because of error or defects not affecting the substantial rights of the parties, etc., it was the legislative intent that the material facts constituting a plaintiff's cause of action should be stated

directly, concisely, and in plain language, so as to meet the comprehension of persons of common understanding, and that a more liberal rule than that obtaining at common law should prevail in the construction of pleadings, with a view to substantial justice between the parties.   p. 600.

2.   PLEADING.— *Complaint.— Construction.— Presumptions.— Inferences.*—In construing a complaint, where a demurrer is interposed, it will be deemed sufficient if the necessary allegations can be fairly gathered from all the averments, even though stated illogically and by way of argument, and all facts that can be fairly and reasonably implied from the allegations made will be deemed stated, and will be given the same force as if directly stated.   p. 601.

3.   MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Allegations.—Inferences.—Sufficiency.*—A complaint, in an action by a miner for injuries caused by the fall of stone or slate from the roof of a mine, alleging that the mine boss knew that the roof was insecure and defective and in a condition to fall at any time, and had such knowledge from two to six days preceding the accident, and in time to have removed the stone that caused the injury, sufficiently alleges by implication the defective condition of the roof, and is sufficient to withstand a demurrer, since its allegations would apprise a person of ordinary understanding of what he is required to meet.   (*McElwaine-Richards Co.* v. *Wall* [1902], 159 Ind. 557, overruled in so far as it holds that courts may not resort to inferences in determining the sufficiency of pleadings.)   p. 602.

4.   APPEAL.— *Review.— Complaint.— Defects.—Reversal.*—Where a complaint, fairly construed, does not omit any fact necessary to entitle the plaintiff to a recovery, the defective and imperfect method of stating some of the material facts, in the absence of any claim that appellant was thereby misled or deprived of making complete defense to the action, will not warrant a reversal of the judgment.   pp. 604, 605.

5.   APPEAL.— *Review.— Technical Errors.— Statutes.—* Section 700 Burns 1908, §658 R. S. 1881, providing that no judgment shall be reversed for any defect in form contained in any pleadings, which by law might be amended by the court below but that the same shall be deemed to be amended in the Supreme Court, applies only to amendments deemed made in support of a judgment and its provisions cannot be invoked for the purpose of reversal. p. 604.

6.   TRIAL. — *Instructions. — Applicability to Issues.* — Instructions should be applicable to facts in issue only, and are not good simply because they state abstract propositions of law.   p. 605.

7. MASTER AND SERVANT.—*Injury to Servant.—Coal Mine Employe. —Instructions.—Harmless Error.*—In an action by a coal miner for injuries caused by stone or slate falling from the roof of the mine, the error in an instruction on the duties of the mine boss, which, in addition to stating his duty to inspect the roof, stated his duty with respect to matters not alleged in the complaint, was cured by an instruction specifically confining plaintiff's right of recovery to failure with respect to the duty to inspect the roof. p. 606.

8. APPEAL.—*Review.—Invited Error.—Instructions.*—Error in instructions as to the duty of a mine boss to visit and inspect the working place, where the complaint did not aver a failure to visit and inspect the place in question, was invited by appellant's requested instruction stating that the complaint charges defendant with negligence in failing to make such inspection, etc., and is therefore not available. p. 606.

9. APPEAL.—*Review.—Construction of Pleadings.—Theory of Trial Court.*—In construing pleadings, a reviewing court, where possible, will accept as correct the theory adopted by the parties in the court below. p. 606.

10. MASTER AND SERVANT.—*Injury to Servant.—Coal Mine Employe.—Instructions.—Harmless Error.*—An instruction, in a coal miner's action for injuries, that "under the statute it is not only the duty of the mining boss to visit the working places in the mine at least every alternate day, but also to make an examination of them," though erroneous on the ground that the statute only requires the visits and examinations to be made every alternate day while the miners are, or should be, at work, was rendered harmless by other instructions correctly informing the jury on the subject of visiting working places. p. 606.

11. APPEAL.—*Review.—Harmless Error.—Instructions.*—Where it is apparent that appellant was not harmed by instructions given, they are not cause for reversal, although they are subject to criticism. p. 607.

12. MASTER AND SERVANT.—*Injury to Servant.—Coal Mine Employe. —Duty of Mining Boss.—"Traveling Way."—Instructions.—Statutes.*—A requested instruction, in a coal miner's action for personal injuries, that a roadway in the room of a mine only for the use of those employed to work in such room is not a "roadway" within the meaning of §8580 Burns 1908, Acts 1905 p. 65, §12, requiring the mining boss to see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work, are taken down, or carefully secured, was properly refused, since the statute should not be narrowly construed to defeat the object of protecting miners from the dangers incident to their employment. p. 607.

13. APPEAL.—*Review.—Harmless Error.—Evidence.*—The fact that the testimony of a witness was a mere conclusion, was harmless, where the fact was proved by other competent evidence and was uncontroverted. p. 608.

14. PLEADING.—*Construction Under Code.*—The rule for the construction of pleadings under the code is more liberal than that of the common law. p. 609.

15. PLEADING.—*Construction at Common Law.—Intendments.*—The rule of construction at common law warrants the drawing of fair and reasonable inferences from facts expressly pleaded. p. 610.

16. PLEADING.—*Indefiniteness.—Remedy.*—Under §385 Burns 1908, §376 R. S. 1881, the defect that a pleading is indefinite or uncertain may be reached by a motion to make specific. p. 614.

17. STATUTES.—*Construction.—Adoption of Statutes Previously Construed.*—Although as a general rule the judicial construction placed upon a statute is .adopted by the reënactment of such statute, the rule is not applicable to the reënactment of the civil code of 1852 by the act of April 7, 1881 (Acts 1881 p. 240) in so far as the adoption of a judicial construction with reference to considering indirect averments, etc., in determining the sufficiency of pleadings is concerned, since there was no clear and uniform construction of the code on this subject prior to its reënactment. p. 615.

18. PLEADINGS. — *Construction.— Presumptions.— Inferences.*— The doctrine that permits the consideration of indirect averments and inferences in determining the sufficiency of pleadings, does not admit of inference arising from speculation, conjecture, or mere possibility, but that only which fairly and reasonably results form the facts stated. p. 618.

19. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Allegations.—Sufficiency.*—A complaint, in a coal miner's action for injuries, alleging that the roof was in a condition to fall at any time and injure the plaintiff, and that his injury was caused by the falling of a piece of slate from the roof of the mine, sufficiently alleges that the particular piece of slate that fell was insecure, in the absence of a motion to make the complaint more specific. p. 619.

From Superior Court of Vigo County; *John E. Cox,* Judge.

Action by McClelland DeArmey against The Domestic Block Coal ·Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under Clause 2, §§1394 Burns 1908, Acts 1901 p. 565.) *Affirmed.*

*J. T. Walker* and *Lamb, Beasley, Douthitt & Crawford,* for appellant.

*Wymond J. Beckett, G. S. Payne* and *W. F. Elliott,* for appellee.

MORRIS, J.—This was an action by appellee against appellant, for damages, for personal injuries for alleged negligence, under §12 of the mining act of 1905 (Acts 1905 p. 65, §8580 Burns 1908). The trial court overruled a demurrer to the complaint, which action is here assigned as erroneous. There was a trial by jury, verdict for appellee in the sum of $3,000, and judgment thereon. Appellant's motion for a new trial was overruled, and this ruling is also assigned as error.

So much of the statute, as is applicable to the case, reads as follows: "The mine boss shall visit and examine every working place in the mine, at least every alternate day while the miners of such places are, or should be, at work, and shall examine and see that each and every working place is properly secured by timbering and that the safety of the mine is assured. He shall see that a sufficient supply of timbers are always on hand at the miner's working place. He shall also see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work, are taken down or carefully secured." §8580 Burns 1908, Acts 1905 p. 65, §12.

The complaint is in one paragraph and alleges that at and prior to the time of the injury, appellant was engaged in mining coal by means of a shaft, sunk from the surface to the coal bed, and then by constructing roads or entries, through the bed from which openings are turned, called rooms and from which the coal is mined; that fifty men, including appellee, were employed in the mine; that appellee was engaged in operating a machine, and his duties required him to move the machine from one part of the mine to another, and operate the same in mining coal; that appel-

lant's mine boss directed him to work in room No. 7, which had been driven in about 200 feet from the entry, to the face of the coal, and appellant had constructed, in the room, a track about 180 feet long, consisting of rails laid on ties, constituting a roadway, or travel way, from the entry, into, and through, the room, to the face of the coal; and that this travel way was the only road or way, by which the mining machine could be moved into and through the room, and to the face of the coal; that when injured, he was moving the machine in the room, along the track, preparatory to cutting coal; that from the end of the travel way, to the face of the coal, a distance of from fourteen to twenty feet intervened; that he had moved the machine to the end of the travel way, and was moving the same into the space between the end of the travel way and the face of the coal, and while so doing, and while he was on the travel way, he was injured by reason of a large and heavy piece of slate or stone, falling on him from the roof of the room.

The allegations relative to appellant's negligence, and appellee's lack of knowledge of danger, are as follows: "And plaintiff says that he was injured by reason of the negligence of said mine boss in failing and neglecting to examine said roof of said room No. 7 with proper care every alternate day as was his duty so to do, and by reason of the negligence of said mine boss in failing to discover that said large piece of slate or stone in the roof of said room became loose and in a dangerous condition, and was likely to fall and injure the miners, including this plaintiff, who worked in said room and traveled back and forth on said travel way, and that he was injured without his fault as aforesaid by reason of the negligence of said mine boss in failing to discover and secure and make safe the roof of said room by taking down said loose and dangerous slate or stone, and that defendant's mine boss negligently failed to notify this plaintiff that the said roof of said mine was defective, and that a large and heavy piece of slate or stone

was likely to fall therefrom and injure this plaintiff, and thereby permitted this plaintiff to go into said room while said roof was in said dangerous condition, and thereby negligently caused and permitted this plaintiff to pass into said room under said defective and dangerous part of said roof, and was thereby injured as aforesaid without his fault. And plaintiff says that defendant's said mine boss knew that said roof was insecure and defective, and was in a condition to fall at any time, and knew that said condition of said roof was dangerous, and was likely and liable to fall and injure the employes of the defendant in said room, including this plaintiff, and had notice and knowledge of said condition of said room in said mine from two to six days before the happening of the accident to this plaintiff, as herein alleged, and in ample time to have taken down said slate or stone from said roof, and during all of said time said miners were at work in said room and working place of said mine. And plaintiff says that defendant's said mine boss negligently failed to take down said loose slate or stone as aforesaid, and negligently failed to notify this plaintiff of said dangerous condition of said roof, and plaintiff says that said loose and dangerous slate or stone in said roof could have been taken down from the roof of said room by said mine boss by means of picks and crowbars and other instruments used for said purpose in said mine and removed from said room without in any way interfering with the proper working of said mine, or without interfering in any way with the mining of coal in said mine. And plaintiff says that he had no notice or knowledge that said roof was defective and dangerous and likely to fall and injure him at any time prior to the happening of said accident as herein alleged; and plaintiff says that by reason of the negligence of said mine boss, as aforesaid, said heavy piece of slate or stone fell from the roof of said room No. 7, as aforesaid, and injured this plaintiff, as aforesaid, without his fault."

It is earnestly contended by appellant that considering the complaint on the theory most favorable to appellee— that of charging a violation of that part of the act which requires the mine boss to ''see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work are taken down or carefully secured''—it yet fails to state facts sufficient to repel the demurrer, because it is not directly averred that the slate, or stone, was loose, or dangerous, prior to the accident, or that appellant failed to perform any duty owing to appellee, or that it had any notice of the danger, or what was the proximate cause of the injury. Appellant insists that the absence of direct averments of facts cannot be deemed as supplied by recitals, conclusions or arguments. On the other hand counsel for appellee assert that under the liberal provisions of our code this court would not be warranted in reversing the judgment because of the defective condition of the complaint.

Our code of civil procedure, adopted in 1852, was modelled after that of the state of New York, and contains the following provisions: Sec. 47. ''All the distinct forms of pleading heretofore existing, inconsistent with the provisions of this act, are hereby abolished; and hereafter the forms of pleadings in civil actions in courts of record, and the rules by which the sufficiency of the pleadings is to be determined, are modified as prescribed by this act.'' 2 R. S. 1852, p. 37, §341 Burns 1908, §336 R. S. 1881.

Sec. 49. ''The first pleading on the part of the plaintiff is the complaint. The complaint shall contain  *  *  *. Second. A statement of the facts constituting the cause of action, in plain and concise language, without repetition and in such manner as to enable a person of common understanding to know what is intended.'' 2 R. S. 1852 p. 38, §343 Burns 1908, §338 R. S. 1881.

Sec. 90. ''In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed with a view of substantial justice be-

tween the parties * * * ''. 2 R. S. 1852 p. 45, §385 Burns 1908, §376 R. S. 1881.

Sec. 101. ''The court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect.'' 2 R. S. 1852 p. 50, §407 Burns 1908, §398 R. S. 1881.

Sec. 580. ''No judgment shall be stayed or reversed, in whole or in part, by the Supreme Court, for any defect in form, variance, or imperfections contained in the record, pleadings, process, entries, returns or other proceedings therein which by law might be amended by the court below, but such defects shall be deemed to be amended in the Supreme Court * * *.'' 2 R. S. 1852 p. 162, §700 Burns 1908, §658 R. S. 1881.

A consideration of the above provisions, induces the conclusion that it was the intention of the legislature, in framing them, that all the material facts, constituting a

1. plaintiff's cause of action, should be stated directly, concisely, and in plain language, so as to meet the comprehension of persons of common understanding; it, however, urges the further conclusion, that it was contemplated by the legislature that nevertheless, there would appear imperfections and defects in pleadings and proceedings, and that it intended that, on appeal, no defect or imperfection should warrant the reversal of a judgment of the trial court unless the same might materially affect the substantial rights of the losing party. It was contemplated that in a civil action, each party litigant should have one fair and impartial hearing in the trial court, of all matters of substance constituting his cause of action or defense, and for a substantial lack thereof, but not otherwise, the duty was imposed on courts of review to award another hearing. In the construction of pleadings, it is evident that the legislature intended a more liberal rule, with a view of substan-

tial justice, than obtained at common law. The latter rule is often stated as requiring a construction most strongly against the pleader. This statement standing alone, is not exact. The rule was, "if the meaning of the words be equivocal, they shall be construed most strongly against the party pleading them, for it is to be intended that every person states his case as favorably to himself as possible. (Co. Lit. 30, 36). But the language is to have a reasonable intendment and construction, (Com. Dig. Pleader C. 25) and if the sense be clear mere exceptions ought not to be regarded (5 East 529). And where an expression is capable of different meanings, that shall be taken which will support the averment, and not the other, which would defeat it (4 Taunt. 492, 5 East 257)." 1 Saunders, Pl. and Ev. 919, 31 Cyc. 78. In this State, by virtue of the provisions of §90, of our code (§385 Burns 1908, *supra*), it is well settled that a pleading, considered in its general scope, and as an entirety, will be liberally construed in order to promote justice between the parties. *Smith* v. *Borden* (1903), 160 Ind. 223, 228, 66 N. E. 681, and authorities cited.

In construing a complaint, where a demurrer is interposed, it will be deemed sufficient whenever the necessary allegations can be fairly gathered from all the averments, even though stated illogically and by way of argument. All facts will be deemed stated that cån be implied from the allegations made, by fair and reasonable intendment, and facts so impliedly averred will be given the same force as if directly stated. Baylies, Code Pl. and Pr. (2d ed.) §3; *Sage* v. *Culver* (1895), 147 N. Y. 241; *Williamson* v. *Yingling* (1884), 93 Ind. 42, 44; *Vance* v. *Schroyer* (1882), 82 Ind. 114, 117; *French* v. *Howard* (1860), 14 Ind. 455; *Austin* v. *Swank* (1857), 9 Ind. 109; *Town of Newcastle* v. *Grubbs* (1908), 171 Ind. 482, 489, 86 N. E. 757; *Indiana, etc., Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361, 363, 75 N. E. 649; *Pennsylvania Co.* v. *Sears* (1894), 136 Ind. 460, 465, 34 N. E. 15, 36 N. E. 353;

*Bell* v. *Eaton* (1867), 28 Ind. 468, 92 Am. Dec. 329; *Barkley* v. *Mahon* (1884), 95 Ind. 101; *Antioch Coal Co.* v. *Rockey* (1907), 169 Ind. 247, 82 N. E. 76; *Jones* v. *Monson* (1908), 137 Wis. 478, 119 N. W. 179, 129 Am. St. 1082. In *Roberts* v. *Sampson* (1897), 50 Neb. 745, 748, 70 N. W. 384, the court said: "It is not enough, when a pleading is thus assailed [by general demurrer], that the facts are imperfectly stated, that it lacks definiteness of expression or that the facts are argumentatively averred, but it will be held to charge what can be implied upon the statements therein by reasonable and fair intendment." To the same effect, see, *Marie* v. *Garrison* (1880), 83 N. Y. 14; *Morse* v. *Gilman* (1863), 16 Wis 531; 31 Cyc. 48, 73, 79, 80; *White* v. *White* (1907), 132 Wis. 121, 111 N. W. 1116.

There is no direct averment in this complaint that the roof was defective or dangerous prior to the accident, but it is alleged that the mine boss knew the roof was 3. insecure and defective and in a condition to fall at any time, and had such knowledge for a period of from two to six days preceding the accident, and in time to have taken down the stone that caused the injury. Appellee insists that the averment of the complaint to the effect that the mine boss knew of the defective condition of the roof, coupled with other allegations, compels the inference that such condition existed, and that, in any event, this court is not warranted, under the curative statutes above quoted, in reversing the judgment, because of the defects in the complaint. Appellant claims that such inference cannot be indulged, and that the sufficiency of the complaint must be determined from the same point of view as occupied by the trial court, in acting on the demurrer, and cites *McElwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557, 65 N. E. 753, and other cases, in support of such contention. It would appear that appellant's contention is fairly sustained by the decision of the McElwaine-Richards case, but it is insisted by appellee that the rule declared in

that case is not in harmony with the doctrine generally recognized by this and other courts. The recent case of *Agar v. State* (1911), 176 Ind. 234, 94 N. E. 819, is instructive on the question of indirect averments in an indictment. It was there held that the true test of the sufficiency of an indictment is whether the material averments thereof are stated with such certainty as to apprise the defendant of the nature and cause of the charge against him. The opinion contains an exhaustive review of the authorities, and quotes with approval the following from Bicknell, Crim. Prac. 102: "That A, being an officer, etc., is a sufficient averment that he was an officer, 2 Burr. 832; 2 Hawkins, chap. 25, §112. So the words 'that A, knowing that B was indicted for forgery, concealed a witness against him,' etc., is a sufficient averment that B was indicted; and where an indictment for perjury stated that, at and upon the hearing of the said complaint, the defendant deposed, etc., this was held to be a sufficient averment that the complaint was heard." In the Agar case, *Axtell* v. *State* (1910), 173 Ind. 711, 91 N. E. 354, which held an averment, by indirection and recital, insufficient on motion to quash, was expressly overruled. The McElwaine-Richards case was decided without the assistance of a brief by appellee. This failure to file a brief warranted the court in reversing the judgment without further reason. Whether the court would have reached the same conclusion it did, had appellee discharged his duty, in assisting the court by filing a brief, is a question not necessary here to consider, but we believe that in so far as that case held that courts are not warranted in resorting to inferences or deductions where the question involves the sufficiency of a pleading, it announced an erroneous doctrine, and to that extent it is overruled. Mindful of the rule that a demurrer admits as true not only the facts well pleaded, but also all others reasonably inferable therefrom (*Antioch Coal Co.* v. *Rockey, supra*), we think it cannot be fairly said that any material fact, requisite to

recovery, is omitted from the complaint. It was sufficient to apprise a person of ordinary understanding of what he would be required to meet. *Agar* v. *State, supra; Valparaiso Lighting Co.* v. *Tyler* (1912), 177 Ind. 278, 96 N. E. 768.

Appellant makes no claim that it was misled or deprived of making complete defense to the action because of any defect in the complaint, and if this judgment be reversed because of the court's ruling on demurrer, the only substantial result attained thereby, would be the instruction received by appellee's counsel in the science of pleading. However desirable it may be to the courts to secure pleadings that are scientifically accurate, we are not warranted in reversing judgments solely for such reason. Appellant did not see fit to file a motion to make the complaint more definite and certain. Fairly construed, the pleading does not omit any fact necessary to entitle the plaintiff to a recovery. The defective and imperfect method of stating some material facts, would not warrant a reversal of the judgment, because of the provisions of §§407, 700 Burns 1908, *supra. Noble* v. *Davidson* (1912), 177 Ind. 19, 96 N. E. 325; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177; *Driscoll* v. *Penrod* (1911), 176 Ind. 19, 95 N. E. 313.

It is apparent that §700 Burns 1908, *supra,* applies only to amendments deemed made in support of a judgment and its provisions could not be invoked for the purpose of reversal. Baylies, Code Pl. and Pr. 525. In most of the cases cited by appellant, it does not appear from the opinions that any question relative to the application of the above mentioned curative statutes was ever presented to the court.

In a great number of the cases relied on by appellant, it would appear that indirect averments, by way of recital, were entirely disregarded. Without setting out these cases, it is sufficient to say that the broad rule therein announced,

must be considered as modified by the more recent case of *Agar* v. *State, supra,* for it will not be contended that a stricter rule of construction applies to civil than to criminal pleadings.   In *Belt R., etc., Co.* v. *Mann* (1886), 107 Ind. 89, 7 N. E. 893, cited by appellant, it was said in relation to the curative statutes set out in this opinion, that "where a demurrer to a complaint which fails to state a cause of action has been overruled, the error in so ruling cannot be cured by resorting to the sections relied on". Substantially the same doctrine is announced in numerous other cases which appellant cites.   Here there was no omission from the complaint of any material fact, but

4.   the difficulty arises over the defective method of stating certain necessary facts, and in such case the above doctrine does not apply.   We think this court would not be warranted in reversing the judgment here by reason of the objections urged by appellant against the complaint.

It is contended by appellant that plaintiff's requested instruction No. 5, given by the court, was erroneous, because it contained matter not within the issues and was misleading.   In the instruction, the jury was informed generally concerning the statutory duties of the mine boss, and, among other things, that it was the latter's duty "to keep a careful watch over the ventilating apparatus and air ways, and, as the miners advance their excavations, to carefully secure against falling, on the traveling and air ways, all loose coal, slate and rock overhead."   The instruction further informed the jury that the failure of the mine boss to discharge the "duties aforesaid, prescribed by statute," is negligence, imputable to the defendant.   The complaint alleges no neglect of duty with reference to air ways or ventilating apparatus, and consequently the instruction dealt with matters not in issue.   Instructions should be applicable

6.   to facts in issue only, and are not good simply because they correctly state abstract propositions of law.   *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 25 N.

E. 156.   The error, however, was harmless, for in instruction No. 2, requested by appellant, the court specifically instructed the jury as to its duties, and therein informed it that plaintiff could not recover unless it found from a preponderance of the evidence either that defendant was negligent in failing to have its mine boss visit room No. 7 each alternate day, etc., or that defendant was negligent in that it had notice through its mine boss, or otherwise, that the piece of slate or rock that fell was loose, etc.

In said instruction No. 5, the court informed the jury that it was the statutory duty of the mine boss to visit and examine every working place in the mine at least every alternate day, etc.   It is claimed this was erroneous, because the complaint contains no averment of the failure of the mine boss to visit and examine the place in question.   In appellant's requested instruction No. 2, given by the court, it was stated that "The plaintiff in his complaint  *  *  *  charges that the defendant company was negligent in that it failed by and through its mine boss to visit and examine the roof of room No. 7, *  *  *  every alternate day," etc.   It thus appears that if the court erred in the above respect, the error was invited by appellant, and consequently it has no just ground of complaint.   Besides, where possible, a reviewing court will, in construing pleadings, accept as correct, the theory adopted by the parties in the court below. *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574, 76 N. E. 400; 31 Cyc. 85.

Instruction No. 8 given by the court, among other things, contains the following statement: "Under the statute it is not only the duty of the mining boss to visit the working places in the mine at least every alternate day, but also to make an examination of them."   It is contended that the above is erroneous because the statute only requires the mine boss to visit and examine every alternate

day while the miners are, or should be, at work. Considered with reference to other instructions given, appellant was not harmed. In other instructions the jury was correctly informed as to visiting the working places, and here the court was directing the attention of the jury specifically to the further duty of the mine boss to make an examination of them.

Instructions Nos. 6, 7 and 9, given at appellee's 11. request, are claimed to be erroneous. While each of them may be subject to some criticism, it is apparent that appellant was not harmed by the giving of any one of them.

Appellant, by its requested instruction No. 5 sought to have the court inform the jury that by a traveling way in a coal mine is meant that way which the employes 12. generally use in passing to and fro between their working places and the hoisting shaft, and that a roadway in the room of a mine, the purpose of which is only for the use of those employed to work in said room, is not a traveling way within the meaning of the statute. This instruction was refused, and the courts action is assailed as erroneous.

The statute requires that the mining boss shall "see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work, *are taken down* or carefully secured." (Italics ours.) §8580 Burns 1908, *supra.* The above clause appeared in the mining act, as amended in 1897, except the italicised words thereof, which were added by the amendment of 1905. Acts 1905 p. 65. Acts 1897 p. 168. In *Antioch Coal Co.* v. *Rockey, supra,* it was said: "If for any reason it becomes impracticable to secure loose coal, slate or rocks overhead in the working place in the mine by means of timber or props, such loose coal, slate or rock should be removed before the miners are permitted to resume their work." Inasmuch as props could not well be set in a travel way, the task of securing loose rock over-

head by propping might present practical difficulties and it is presumed that for that reason the statute was so amended in 1905 as to require the loose rock, over travel ways,. to be taken down, unless they could, by practical means, be safely secured. The practical difficulty in the way of securing loose rock hanging over the travel way exists as well in the way through a room as in that connecting the room with the hoisting shaft. It was necessary for workmen to pass to and fro over the way in the room in controversy, both in moving the machines, and hauling the coal to the hoisting shaft. And while not so many workmen would pass over the way through the rooms, as over the other ways, we do not think that it was the intention of the legislature to limit the application of the statute as suggested in the requested instruction. The object of the statute was the protection of miners from the dangers incident to their employment, and the statute should not be narrowly construed. The court did not err in refusing the requested instruction.

It is claimed the court erred in permitting one Deuricker to testify that he and appellee had no duties to perform with reference to taking down the slate or stone which fell 13. and injured appellee, because the statement was a mere conclusion. It is sufficient to say that appellant was not harmed by the testimony, for the fact was proved by other competent evidence, and was uncontroverted.

Appellant contends the court erred in permitting appellee to testify that the place where he was injured was what is commonly called by the miners a traveling way. What we have already said with reference to instruction No. 5, requested by appellant, covers the ground of this objection.

Other questions are presented in regard to the admission and exclusion of evidence, but no reversible error was committed with reference thereto. One of the reasons urged for

a new trial was based on the alleged misconduct of one of the jurors. Numerous affidavits and counter-affidavits were filed. The trial court found in favor of appellee. The finding was supported by sufficient evidence contained in the counter-affidavits. It is finally urged that the verdict of the jury is not supported by sufficient evidence. Without setting out its substance it is sufficient to say that there was proof of each material allegation of the complaint.

The record discloses no reversible error. Judgment affirmed.

## ON PETITION FOR REHEARING.

MORRIS, J.—Counsel for appellant have filed a brief of great length, vigorously assailing the declared rule that in determining the sufficiency of a complaint, on demurrer, the court will consider facts fairly and reasonably inferable from those expressly stated.

It is contended that the rule of construction under our code is the same as at common law, and, tested by the common-law rule, the complaint here is insufficient. It cannot be conceded that our code rule is no more liberal than that of the common law. The contrary has been declared by this court. *Malott* v. *Sample* (1905), 164 Ind. 645, 648, 74 N. E. 245, and cases cited; *Indiana, etc., Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361, 363, 75 N. E. 649, and cases cited; *Town of Newcastle* v. *Grubbs* (1908), 171 Ind. 482, 86 N. E. 757. The rule of construction, under the code system, is stated as follows, in 4 Ency. Pl. and Pr. 755: "Even on demurrer, pleadings are to be liberally construed. The complaint on demurrer must be deemed to allege that which can be *implied from* the allegations therein *by a reasonable and fair intendment*. And a reasonable construction will be given although the facts are imperfectly or informally averred and argumentatively stated, or the pleading lacks definiteness and precision." (Italics ours, throughout.)

Were it conceded that the common-law rule governs, it warrants the drawing of fair and reasonable inferences from facts expressly pleaded. "The language of the pleading is to have a *reasonable intendment,* and construction; and where an expression is capable of different meanings, that shall be taken which will support the declaration, and not the other, which would defeat it." 1 Chitty, Pleading (14th Am. ed.) 237; 1 Saunders, Pl. and Ev. 919; Stephen, Pleading 379; 4 Ency. Pl. and Pr. 759; 31 Cyc. 78.

Appellant's counsel assert that as against a demurrer for want of facts a paragraph of complaint cannot be aided by intendments; that a defendant's neglect of duty, etc., must be directly, specifically and positively averred, and cannot be shown by "recital, conclusion or inference". It would appear to be counsel's position that the correct rule would prohibit entirely resort to inference or implication; but in no event could such resort be justified unless the suggested inference is one necessarily arising from facts directly averred. Counsel say, "If, when a complaint is challenged by demurrer * * * the judge may consider facts * * * which do not appear except by way of inference, the judge who rules on the demurrer, and the judge who presides at the trial * * * may draw reasonable inferences directly opposite, and confusion and * * * chaos will be the inevitable result." A great number of Indiana cases are cited, the most important of which will be noted later. In dealing with treaties, constitutions, statutes, charters, contracts, wills, deeds and other written instruments, there is, and ever has been, since the beginning of civil government, resort to inference or implication. The limitations of the human mind, and the imperfections of human language are such that resort to implication is a fundamental necessity in the ordinary affairs of life.

In his treatise on the Federal Constitution, Story, in speaking of a supposed attempt by the framers of the in-

strument to positively enumerate the powers desired to be granted to congress says: "It must have embraced all future, as well as all present exigencies, and been accommodated to all times, and all occasions, and all changes of natural situation and character. * * * Who does not at once perceive that such a course is utterly beyond human reach and foresight? It demands a wisdom never yet given to man; and a knowledge of the future which belongs only to Him whose providence directs and governs all." 1 Story, Constitution §1239. The same author, (1 Story, Constitution §433) asserts that the faculties of man are not competent to frame a system of government which would "leave nothing to implication", and that a detailed list of all the necessary powers of a government, and the means of executing the same, could not be comprehended by the human mind. The same learned jurist, (1 Story, Constitution §1244), says: "Such is the character of human language that no word conveys to the mind in all situations one single definite idea; and nothing is more common, than to use words in a figurative sense. Almost all compositions contain words, which, taken in their rigorous sense, would convey a meaning different from that which is obviously intended."

To wholly prohibit resort to inference, in determining the sufficiency of a pleading, would at once result in the destruction of the system, and, notwithstanding some expressions to be found in certain opinions of judges, where words were used in a sense obviously not intended, it may be safely asserted that no court ever deliberately held, or intended to hold, that inferred facts may never be considered in determining, on demurrer, the sufficiency of a pleading. In cases cited by appellant, may be noted the following expressions: "It is an elementary principle that, in pleading, facts must be positively averred and not set out by way of recital, inference, or conclusion." *Wabash R. Co.* v. *Hassett* (1908), 170 Ind. 370, 378, 83 N. E. 705. "It has been repeatedly affirmed by this court that facts in a pleading must be posi-

tively averred and not set out by way of recital, inference or conclusion." *Wabash R. Co.* v. *Beedle* (1910), 173 Ind. 437, 445, 90 N. E. 760. "But, in determining the sufficiency of pleadings, only inferences necessarily arising from facts alleged will be indulged." *Rowan* v. *Butler* (1908), 171 Ind. 28, 32, 85 N. E. 714.

Appellee cites the opinion in *Antioch Coal Co.* v. *Rockey* (1907), 169 Ind. 247, 254, 82 N. E. 76, which contains the following expression: "Appellant, by his demurrer to the complaint, conceded as true all the facts therein which were well pleaded, *together with all the reasonable inferences which might be deduced from such facts.*" The opinion was written by Jordan, J., who delivered the opinion in *Wabash R. Co.* v. *Beedle, supra.* In *Town of Newcastle* v. *Grubbs, supra,* 489, it was said: "The pleading is to be read in the light of all such ultimate facts as must necessarily be *intended* from the facts which are well pleaded. A complaint ought to be *fairly* construed, and it is often the fact that matters of substance are shown *by the very narrative of the manner* in which an occurrence took place." In support of the ruling, the court cites §385 Burns 1908, §376 R. S. 1881, which provides that in construing a pleading "its allegations shall be liberally construed, with a view to substantial justice between the parties." 4 Ency. Pl. and Pr. 745, also cited in support of the ruling, declares: "Every reasonable intendment will be made in favor of the pleading, and this even though implications are resorted to, since what is necessarily understood or implied in a pleading forms a part of it as much as if it was expressed." A consideration of the foregoing opinions compels the conclusion that it was never intended by this court to hold, that in determining the sufficiency of a pleading, on demurrer, resort may not be had to implication.

To hold that resort may not be had to inference, involves an absurdity. "The statement of the simplest fact embodies an element of inference. The most instant intuitive recog-

nition of a familiar object necessarily connotes an act of reasoning." 3 Chamberlayne, Mod. Law of Ev. §1801. See, also, same author, §1733a. A consideration of the opinions cited, in volumes 169, 170, 171 and 173 of our Indiana reports, compels the conclusion that this court never intended to declare any such fallacious rule.

Is the rule declared in the original opinion that resort may be had to inference, if "fair and reasonable", from the facts stated, too broad in its scope, or should it be restricted to such inferences as are necessarily compelled? It has already been shown in this and the original opinion, that both at the common law and under the codes, the rule conformed to the doctrine declared here. Is the rule in Indiana more restrictive? Perhaps the particular distinction between "fair and reasonable," and "necessary" inference, has not been presented to this court. Expressions similar to those quoted from cases cited by appellant's counsel may be found in other cases which they cite, yet, in *Douthit* v. *Mohr* (1888), 116 Ind. 482, 18 N. E. 449, where the only error assigned was the action of the trial court in overruling a demurrer to the complaint, it was said: "It has been frequently held that a complaint upon a promissory note must show that the note remained unpaid at the time the action was instituted. *Wheeler & Wilson Mfg. Co.* v. *Worrall* [1881], 80 Ind. 297. *But this need not be in direct terms.* It is sufficient if facts be stated from which it may be *fairly inferred* that the note remains unpaid. *Downey* v. *Whittenberger* [1877], 60 Ind. 188. The *fair inference* from the facts stated in the complaint, in this case is, that the note remained unpaid when that pleading was filed." This ruling was cited with approval in *Malott* v. *Sample, supra, Evansville, etc., R. Co.* v. *Darting* (1893), 6 Ind. App. 375, 33 N. E. 636, and *Scott* v. *Lafayette Gas Co.* (1908), 42 Ind. App. 614, 619, 86 N. E. 495.

In *Barkley* v. *Mahon* (1884), 95 Ind. 101, 103, it was said: "It may be *fairly inferred* from the allegations in

the complaint, * * * that the sheriff set apart * * * the property as exempt. * * * An argumentative pleading may be so conclusive as to amount to an express allegation * * * when tested by demurrer. * * * The defect in such pleading can be reached only by motion to make it more certain." In *Wagoner* v. *Wilson* (1886), 108 Ind. 210, 212, 8 N. E. 925, it was alleged in the complaint that plaintiff advanced and loaned $1500 to defendants, who "have refused to pay the plaintiff, though often requested so to do." The court said: "This, though not a *direct* and *explicit* allegation that the money advanced remained unpaid, made it *reasonably certain by inference* that the sum advanced was due and unpaid at the time the complaint was filed."

A consideration of the cases of *Antioch Coal Co.* v. *Rockey, supra,* and of the other cases above noted, does not warrant the conclusion that this court has adopted a rule, relating to inferences, more restrictive than the one recognized by the common law and by the codes of other jurisdictions. It is not contended but that a court's construction should be fair. If, in the discharge of such duty, resort to inference is proper, surely if the proposed inference is one that fairly and reasonably arises from the facts stated, it should be accorded the same effect as if arising from necessity. It is true that honest minds may draw different conclusions as to what is a reasonable and fair inference; the same may be said of a necessary one, for inference results from the exercise of the reasoning powers, and, in the last analysis, reason must, of necessity, be the final arbiter in all controversies over the proper interpretation of any written instrument.

It should not be forgotten that one against whom a pleading is directed has a remedy other than a general demurrer to render the pleading definite and certain, where it might be otherwise subject to varying construction. The special demurrer at common law, and the motion

to make more definite and certain (§385 Burns 1908, §376 R. S. 1881) under our code, perform that particular function, while the general demurrer is not designed to challenge the pleading for such defects, if it is certain to a common intent—that is, if it be clear enough "according to reasonable intendment." Stephen, Pleading 379; *Johnson Harvester Co.* v. *Bartley* (1884), 94 Ind. 131, 132; *Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 265, 38 Am. Rep. 134, and cases cited. In the last-named case the court said: "There is no hardship in this rule of pleading.  *  *  * If the defendant had desired a more specific statement of the negligence imputed to it, that end could have been attained by motion."

Our civil code, enacted in 1852, was in the main, reënacted by the act approved April 7, 1881. Acts 1881 p. 240. It is asserted that the doctrine declared in the original

17. opinion, to the effect that indirect averments by way of argument, etc., should be considered in determining, on demurrer, the sufficiency of a pleading, and that facts shall be deemed stated when fairly and reasonably inferable, is in conflict with the uniform rulings of this court prior to the enactment of 1881; that by such reënactment, the legislature of 1881, adopted the uniform construction of this court, and, consequently, such a construction, by adoption, became a part of the act. The doctrine of adopting judicial construction by reënactment of a statute is generally recognized. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113. However, the construction must be clear, and uniform. If the preceding decisions of the court have been antagonistic, it is evident the doctrine would be impossible of application.

Counsel have cited a great number of cases to show judicial construction prior to April, 1881, among which are the following: *Sinker, Davis & Co.* v. *Fletcher* (1878), 61 Ind. 276; *Clark* v. *Lineberger* (1873), 44 Ind. 223; *Utica Tp.* v. *Miller* (1878), 62 Ind. 230; *Friddle* v. *Crane* (1879),

68 Ind. 583; *Johnson* v. *Breedlove* (1880), 72 Ind. 368; *Abell* v. *Riddle* (1881), 75 Ind. 345; *Day* v. *Vallette* (1865), 25 Ind. 42, 87 Am. Dec. 353. Is the doctrine declared in the original opinion in conflict with the uniform rulings of this court prior to April, 1881? In *Austin* v. *Swank* (1857), 9 Ind. 109, it was contended that a reply was bad, on demurrer, for lack of a material averment. The court held: "If it was necessary that the reply should contain that averment, we may say that it did so, in an *argumentative form*, which was sufficient upon a general objection."

In *Bell* v. *Eaton* (1867), 28 Ind. 468, 92 Am. Dec. 329, in an answer to a complaint for a breach of marriage contract, it was alleged that defendant "learned that the plaintiff had been, prior to his acquaintance with her, delivered of a bastard child, and he avers that through the fraudulent concealment of the plaintiff he was, at the time of the making of said agreement, ignorant of the fact that the plaintiff had been so delivered of a bastard." Sustaining a demurrer to the answer was held erroneous. On the objection that the answer was argumentative, it was said: "We must regard the argument as so conclusive as to amount to an express allegation of the facts, when tested by demurrer." This case was never reversed nor criticised. In *Coolman* v. *Fleming* (1882), 82 Ind. 117, it was cited with approval, the court saying: "An argumentative pleading will not be held bad on demurrer." In *Bouslog* v. *Garrett* (1872), 39 Ind. 338, in a complaint on an account stated, it was alleged that "the defendant was indebted to the plaintiff in the sum of * * * for money found due from the said defendant to the plaintiff upon an account then stated between them; which said sum, together with the legal interest thereon, remains unpaid, for which he demands payment." In holding the complaint good, the court said: "It may be advisable, in such a paragraph, to allege an express promise to pay * * *. But we think this is *impliedly* included in the allegations of the paragraph in

question." This case was never overruled, and was cited with approval in *McDowell* v. *North* (1900), 24 Ind. App. 435, 55 N. E. 789. In *Downey* v. *Whittenberger* (1877), 60 Ind. 188, it was held, in a suit on a note, that the averment, "there is due" a specified sum, was a sufficient allegation that the note remained unpaid. This case was never criticised, and was approved in *Douthit* v. *Mohr, supra.*

In *Mackenzie* v. *Board, etc.* (1880), 72 Ind. 189 (Nov. Term, 1880), in holding a complaint sufficient to repel a demurrer for lack of capacity to sue, the court said: "The name in which the plaintiff sued *fairly implied* that the plaintiff was a corporation, and this implication was sufficient to withstand the appellants' demurrer for the second statutory cause." In *Indianapolis Sun Co.* v. *Horrell* (1876), 53 Ind. 527, it was urged that the complaint was defective for failure to allege that the defendant, named in the complaint as the "Indianapolis Sun Company", was a corporation. The court held: "Suing or defending by such name *impliedly* alleges that it is a corporation."

In *Utterback* v. *Terhune* (1881), 75 Ind. 363, 366, in considering a widow's complaint for partition, wherein it was alleged that she owned, as the widow of a named decedent, one-third of the land in dispute, the court said: "The allegation that she owned one-third of the land *argumentatively asserted* that she was the first wife, or a subsequent wife having children by her husband, alive at his death." In *Ohio, etc., R. Co.* v. *Collarn, supra,* 265, an action for personal injuries, a complaint was held sufficient to repel a general demurrer. The court in its opinion (by Worden, J.) said: "It is not *certain from the allegation in what the alleged carelessness and negligence of the defendant in running the locomotive consisted;* but the defect should have been reached by a motion to make the paragraph more specific." In *Snyder* v. *Baber* (1881), 74 Ind. 47, 50, it was held on general demurrer to a complaint that an allegation that defendant refused to account to plaintiff for the assets of

the firm, implied a demand. The court said: *"It seems to us, that a demand for an accounting, before suit brought, is necessarily implied in and by this allegation.* \* \* \* The appellant's remedy was a motion to make more specific, and not a demurrer for want of facts; for, when the appellant admitted, as he did by his demurrer, that he had refused to account to the appellee, he also admitted by necessary *implication,* that the appellee had demanded of him the accounting which he had refused."

The last three cases cited were decided at the May term, 1881, and, consequently, after the reënactment of the code (April, 1881). Three of the five judges then constituting the court, Worden, Niblack and Howk, occupied the same position from January, 1877 to December, 1882, and during the time covered by the Indiana reports from volume 56 to 83 inclusive. Under such conditions, these later decisions are valuable in determining the attitude of this court, on the question in controversy, at, and before the reënactment. It is manifest that previous to the reënactment of the code of 1881, it had not been uniformly and consistently held by this court that indirect averments in a pleading would be entirely disregarded, nor that resort would not be had to inference, nor even that such resort should be restricted to that arising out of necessity, and consequently the rule in question is not applicable.

The doctrine declared in the original opinion does not admit of inference arising from speculation, conjecture or mere possibility; but that only which fairly and reasonably results from the facts stated. Perhaps an examination of the records in the many cases cited by appellant would disclose that in most of them the suggested inference was merely conjectural, and consequently that the conflict of rulings is more apparent than real. There seems to be some misapprehension, on appellant's part, of the scope of the original opinion. It was not held therein, that the absence of a material averment from the

complaint, would, on demurrer, be deemed supplied by the curative statutes; neither was anything said on the subject of resorting to the evidence to cure the defects of the complaint. Counsel assert that even if "we go into the realm of inferences," the interpretation placed on the complaint is arbitrary and absurd. It is further asserted that the opinion is in violation of rules "as firmly fixed as the Ten Commandments or the Roman Tables" and "rules well known to every lawyer qualified for admission to the bar."

Our attention is drawn to three facts, which, in language not free of asperity, counsel assert are wholly omitted from the complaint. These are as follows: (1) "The fact that the piece of slate or stone that fell, was loose, is not stated at all. (2) The fact that the mine boss either actually or constructively knew that the piece of slate or stone was loose, is not stated even defectively. (3) The fact that the mine boss failed to secure that piece of slate or stone is not stated in any form." It is alleged in the complaint, that plaintiff's injury resulted from the falling "from the roof of said room," of a piece of slate weighing one or two tons; it is averred, impliedly at least, that the roof of the room was defective and insecure, "and was in a condition to fall at any time * * * and injure * * * this plaintiff * * *." That the whole of a thing includes all the parts thereof, is an axiomatic truth. If the entire roof was insecure and liable to fall, the portion thereof consisting of the piece which fell on plaintiff, was necessarily insecure and liable to fall. If appellant desired a more specific statement concerning the portion of the roof which fell on plaintiff, a motion therefor, rather than demurrer, afforded the appropriate remedy.

At the trial, appellant's counsel, by its requested instruction No. 2, sought to have the jury told specifically what were the material allegations of the complaint. The requested instruction was given, and contains the following: "Plaintiff further alleges in his complaint that the mine

boss knew that prior to plaintiff's injuries, that the piece of slate that fell upon and produced plaintiff's injuries was loose, and insecure and defective, and was in a condition to fall at any time." It would appear that at the time of the trial, neither counsel nor court, entertained any doubt about the proper construction of the complaint in reference to the second proposition now advanced by counsel.

Counsel here state (3rd proposition) that the fact that the mine boss failed to secure that piece of slate or stone is not stated in any form. By said instruction No. 2, counsel said at the trial: "The plaintiff in his complaint, * * * charges that the defendant company was negligent, in that it failed, by and through its mine boss to visit and examine the roof of room No. 7 * * * and in negligently failing to discover that the piece of slate that fell and produced plaintiff's injuries was loose, and in failing to discover and *make secure the roof of said room, by taking down said loose and dangerous piece of slate or stone,* * * *. I instruct you gentlemen, that these allegations in plaintiff's complaint are material allegations, and before you are authorized to return a verdict for the plaintiff * * * you must find * * * that the defendant * * * was negligent in failing to have its mine boss visit said room * * * or that the defendant company was negligent in that it had notice * * * through its mine boss, or otherwise that the roof of said room * * * was defective, *and had notice and knowledge that said piece of slate or rock* * * * *was loose and liable to fall* * * * and that defendant with such knowledge * * * of the loose condition of said slate and its liability to produce injury, failed to take down, or *secure said loose slate,* * * *." It is manifest that when the cause was tried, both court and counsel discerned in the complaint an allegation of failure to "secure that piece of slate". It is proper to say that appellee has not invoked the doctrine of estoppel to bind appellant to the theory of the cause espoused by it in the trial court.

The reference is made to the record to show that the construction of the complaint, adopted by this court, differs in no material respect from that adopted by appellant's learned and experienced counsel, at a time, when, in the faithful discharge of their duties to court and client, a critical analysis of the complaint was required. This interpretation, concurred in by the trial court, appellant's counsel, and this court, is manifestly the one that would be adopted by persons of common understanding. §343 Burns 1908, §338 R. S. 1881. No doubt, in the lapse of time since the trial, counsel have forgotten the views of the complaint then entertained by them; otherwise it must be presumed that much of the present brief would have been eliminated.

The complaint, notwithstanding its surplusage, and unskillful construction, avers sufficient facts to constitute a cause of action; and this, whether tested by common law or code rule. Petition overruled.

NOTE.—Reported in 100 N. E. 675, 102 N. E. 99. See, also, under (1) 31 Cyc. 79, 92, 101; (2) 31 Cyc. 101; (3, 19) 26 Cyc. 1386; (4) 31 Cyc. 763, 769; (5) 3 Cyc. 444; (6) 38 Cyc. 1612; (7) 38 Cyc. 1782, 1787; (8) 3 Cyc. 248; (9) 2 Cyc. 672; (10) 38 Cyc. 1778, 1782; (11) 38 Cyc. 1809; (12) 26 Cyc. 1491; (13) 38 Cyc. 1419, 1425; (14, 18) 31 Cyc. 79; (16) 31 Cyc. 644; (17) 36 Cyc. 1152, 1153. As to the liberality of the code, as contrasted with common law, in construing pleadings, see 57 Am. Dec. 549.